## WILLIAM ANDERSON v. BRITTON F. STAMPS.

The lines of the survey, as actually marked upon the ground, if they can be found and traced, will control course and distance. But that is where the actual survey can be found and identified as the same called for in the grant. It is not meant that where the grant calls for certain known and established natural or artificial monuments and boundaries, these may be controlled by parol proof of a survey entirely inconsistent and repugnant to all the calls of the grant.

Where a survey is, say in the form of a paralellogram, and calls for previous surveys on three of its sides, the boundaries of such survey are determined by the calls for the previous surveys, and by a fourth line closing the survey according to the calls; and if a mistake has been made in making the survey, so that the actual survey was not made according to the calls, the actual survey must be disregarded, not merely as to the three sides, but, it seems, as to the fourth side, also; but there was no proof in this case that the fourth side had been run and marked.

Appeal from Rusk. Tried below before the Hon. Charles A. Frazer.

Suit by appellant against appellee on a promissory note. Answer to the effect that the note was part of the consideration of a tract of one hundred and forty acres of land, sold by plaintiff to defendant, and for which defendant held the bond of plaintiff to make him a title ; that the plaintiff could only make a title to about thirty-five or forty acres of the land ; that defendant had overpaid plaintiff for the quantity of land to which he could make title, in a certain amount, which he prayed in reconvention ; and offered to release the bond for the excess which plaintiff was unable to convey.

The question was, whether the land was included in the Thomas Maxwell survey of three hundred and twenty acres. If it was, or so far as it was, the plaintiff could make a good title, otherwise not.   The field notes of the Thomas Maxwell survey were as follows :

Beginning at the S. E. corner of a survey of one fourth of a league of land made for R. Gonzales, from which a black jack bears North at 10° E. 9 6–10 varas, another bears S. 29° W. 5 6–10 varas ; thence S. 65° W. with said survey, at 940 varas and at 1630 varas, branches, twenty-five hundred varas to the S. W. corner of said survey (the R. Gonzales survey) from which a red oak bears S. 25° E. 10 varas, a black jack bears at 9° W., 11 8–10 varas ; thence S. 25 E., with east boundary line of a league survey made for William F. Allison, seven hundred and twenty-two and 5–10 varas to a post, from which a black jack bears S. 30° W., 9 6–10 varas, a hickory bears S. 59° E. 3 2–10 varas ; thence N. 65° E., twenty-five hundred varas to a post, on the west boundary of a survey in the name of J. M. Martinez, from which a black jack bears N. 35° W., 2 6–10 varas, another bears S. 22° E., 5 6–10 varas ; thence N. 25° W., with said line (of the J. M. Martinez) seven hundred and twenty-two and 5–10 varas to the place of beginning.

It will be observed that acccording to the calls of the patent, as above, the tract was a paralellogram, bounded at the time

of the survey, on three sides, by older surveys. Within the survey as thus described, there were only thirty-seven and three quarter acres of the land called for in the bond, the balance of the land called for in the bond being to the southward, in the direction of what was vacant land at the time of the original survey or location of the Thomas Maxwell. Since said original survey, this land which was then unsurveyed, had been surveyed and patented, calling to commence at the S. W. corner of the Thomas Maxwell, to run southwardly, eastwardly, northwardly to the Thomas Maxwell's S. E. corner, and thence by the line of the Thomas Maxwell to the place of beginning.

It appeared from evidence introduced by the defendant that when the survey of the Thomas Maxwell was made, the surveyor mistook the place of the S. E. corner of the R. Gonzales survey ; that he in fact commenced the survey at a point near to the old Academy on Forest Hill, (which was on the west line of the J. M. Martinez survey, in a line with a projection of the east boundary of the R. Gonzales,) and after running some distance and finding that he was not going in the direction of the S. W. corner of the R. Gonzales, he supposed his compass, which had just met with an accident, was injured, and he abandoned the compass, and went to the S. W. corner of the R. Gonzales, and thence ran the line to the S. W. corner of the survey he was making, which was the third corner, and did not run any further.

A surveyor who was appointed to survey the Thomas Maxwell reported and testified, that he found the beginning corner of the Thomas Maxwell, situated 532 varas S. 20 E. (there was a variation of five degrees between the survey of witness and the original surveys, REPS.,) from the place designated in the field notes, (the southeast corner of the R. Gonzales,) the course and distance of the bearing trees being tolerably accurately described ; that from thence there was no line that would run to the S. W. corner of the R. Gonzales ; but witness, disregarding course and distance, went to said S. W.

corner of the R. Gonzales, that being the second corner de-
scribed in the Thomas Maxwell field notes, and found it cor-
rectly described by the witness trees called for in the Thomas
Maxwell patent; from thence to the S. W. corner of the
Thomas Maxwell, 682 varas, which corner witness found accu-
rately described by the witness trees; from thence witness
could find no line running in the direction called for in the
field notes.

Plaintiff offered to prove by a witness, that he was along
when the original survey of the Thomas Maxwell was made;
that the beginning corner of said survey was established by
the surveyor at or near the Forest Hill Academy, about five
hundred yards from the S. E. corner of the R. Gonzales; and
that at the time the surveyor supposed and believed that the
corner where he commenced the Thomas Maxwell survey was
the corner of the R. Gonzales survey; which testimony was
objected to on the ground that it tended to prove that the
actual survey was different from the survey as described in
the patent, and was excluded. "The Court stated to plain-
tiff's counsel that he might by proof establish on the ground
the Maxwell survey as shown in the patent, and show the
locality on the ground of the calls of the bond, and that the
Maxwell patent covered the land described in the bond."

The Court charged the jury to look alone to the calls in
the patent for the boundaries of the Thomas Maxwell.

The plaintiff requested the Court to charge the jury, 1st.
that the marked trees of a survey must control both course
and distance.

2nd. That if the jury believe from the evidence, that the
beginning corner of the Thomas Maxwell survey is at the
southeast corner of the R. Gonzales survey, and that the other
corners are established by the evidence to be where the dotted
lines represent them to be, on the diagram, in evidence, they
must find that the Thomas Maxwell survey includes all the
land within those bounds.

These instructions were refused. The dotted lines ran from the Forest Hill corner to the S. W. corner of the R. Gonzales, and from the third corner of the Thomas Maxwell, parallel to said first dotted line to a point where it struck the line running S. 25° E. from the Forest Hill corner ; within a hundred and odd yards of which last point the surveyor found an old corner which he said he supposed might be the fourth corner of the Maxwell survey. He found it in running the subsequent surveys to the southward of the Thomas Maxwell as called for in the patent ; and this was the only attempt to prove that the lower line, bounding on what was vacant land at the date of the survey of the Thomas Maxwell, had been actually run or marked. It appeared that the S. E. corner of the R. Gonzales had originally bearing trees similar to those called for in establishing the Thomas Maxwell beginning corner, but that the land had been cleared and the trees cut down, whether at the date of the survey of Thomas Maxwell did not clearly appear.

The jury found for the defendant in accordance with his plea. Judgment, &c.

*S. P. Hollingsworth,* for appellant, cited Burleson v. Urquhart, 6 Tex. R. 502 ; McPherson v. Foster, 4 Wash. C. C. R. 45 ; Thornberry v. Churchill, 4 Monroe, 35 ; Lynn v. Ross, 1 Bibb, 466 ; Cowan v. Fontleroy, 2 Id. 261 ; Preston v. Bowman, Id. 493 ;

*W. Stedman,* for appellee, argued that there was no error, and that if there was any error in excluding evidence offered by the plaintiff, it was cured by the offer of the Court to permit the plaintiff to prove the Maxwell survey on the ground as shown in the patent, &c.

WHEELER, J. The rules governing the construction of grants, upon questions of boundary, are well settled. (6 Tex. R. 502 ; 9 Id. 97 ; Thomas v. George, 16 Id. 74 ; Bolton v.

Lann, Id. 96.) They are invoked only when the calls of the grant lead to different results. Then those calls must be adopted which are most consistent with the intention apparent upon the face of the grant, or the presumed intention of the grantor. Hence the rule that the most material and certain calls will control those which are less certain and material; because those are supposed to be most prominent in the mind of the grantor ; and hence, a call for a natural object, as a river, a known stream, a spring, or even a marked tree, will control course and distance. (9 Tex. R. 103–4.) The lines of the survey, as actually marked upon the ground, if they can be found and traced, will control course and distance. But that is where the actual survey can be found and identified as the same called for in the grant. It is not meant that where the grant calls for certain known and established natural or artificial muniments and boundaries, these may be controlled by parol proof of a survey entirely inconsistent, and repugnant to all the calls of the grant. No case has gone to any such extravagant length as that. That would be virtually to destroy the written evidence of title, and substitute parol evidence in its stead.

The question here is, what are the boundaries of the plaintiff's land ; and upon that question there can be no real difficulty or doubt. The survey and patent under which he claims, call for the southeast and southwest corners and the southern boundary of the Gonzales survey. That evidently was a well known survey ; and the manifest intention was to bound the Maxwell survey upon it. Not only the survey, but the evidence proposed by the plaintiff, shows conclusively that it was so intended.. Holding and claiming under this grant, he cannot be permitted now to claim other land, not embraced in his grant, by proving that the Surveyor was mistaken as to the true southeast corner of the Gonzales survey ; and while he called for, and intended to adopt and establish that, as the northeast corner of his survey, and it is consistent with the

other most material calls of his survey and with adjoining surveys, he really marked and established a corner elsewhere. That would be to contradict by parol the most material calls of his grant. It would not be to make one or more calls, less material and certain, yield to others more certain and material; but it would be to annul the most material and certain calls and boundaries, by evidence of boundary less certain and material; and, in effect, to contradict and annul the grant itself. The call for the Gonzales survey is a call for a known artificial boundary, supposed to be more notorious, and better known and established, and therefore more material and controlling than any other call in the survey and grant; and if any of the other calls were inconsistent with that, they must yield to it. That evidently was the principal object of bounary, had in making the survey and grant; and, consequently, must prevail over all others. (6 Tex. R. 511.) It was adopted and intended as the certain and established northern boundary of the survey, and must be so regarded. To admit evidence of a different boundary would be to contradict and annul the grant.

There manifestly is no error in the judgment and it is affirmed.

Judgment affirmed.