### P. J. Standlee et al. v. G. W. Burkitt.

#### No. 6560.

1. **Excess in Surveys—Calls for Common Line.**—Where two surveys call for a common division line, the surveys being mapped as adjoining and so recognized in the various offices in the State, an excess in one or both surveys will not be a sufficient reason for separating the surveys in favor of a pre-emptor settling upon the land which would be vacant but for the surveys calling for each other.

2. **Cases Adhered to.**—Freeman v. Mahoney, 57 Texas, 626; Boon v. Hunter, 62 Texas, 589; and Morrill v. Bartlett, 58 Texas, 648, adhered to.

3. **Fact Case.** — See facts held insufficient to recover upon suit on a pre-emption by a settler insisting upon a vacancy between two surveys mapped as adjoining and calling for a common division line.

Error from Travis. Tried below before Hon. A. S. Walker. The facts are stated in the opinion.

*Cochran & Parker* and *Walton, Hill & Walton,* for plaintiffs in error.— The judgment on the facts in evidence should have been for defendants (appellants) and against plaintiff (appellee). Robertson v. Mosson, 26 Texas, 248; Booth v. Strippleman, 26 Texas, 436; Booth v. Upshur, 26 Texas, 64; Stafford v. King, 30 Texas, 257; Boon v. Hunter, 62 Texas, 582, and cases cited; Jones v. Andrews, 62 Texas, 652, and cases cited; Fagan v. Stoner, 67 Texas, 286, and cases cited.

*Maxey & Fisher,* for defendant in error.—Plaintiff established title to the land in controversy under the Baker patent, and the court did not err in rendering judgment in his favor against the defendants, who were without right or title whatsoever.

ACKER, PRESIDING JUDGE.— G. W. Burkitt brought this suit on the 26th day of October, 1886, against P. J. Standlee and William Cox, in the usual form of trespass to try title to a tract of land 448 varas wide and 2281 varas long, containing about 181 acres.

The defendants pleaded not guilty.

Before the trial the parties entered into the following written agreement:

"1. That the plaintiff in the above entitled suit has title to the lands described in his petition under the patent issued to G. W. Glasscock, assignee of Caleb W. Baker, to the extent that same are covered by said patent, unless said lands, at the time defendants sought to appropriate the same under pre-emptions, were vacant and subject to appropriation.

"2. That the defendants have made application for and have sought to have said lands appropriated under pre-emption files.

"3. It is further agreed that neither party need introduce in evidence for the purpose of establishing title the title papers under which they claim, and that the three days filing and notice of filing of title papers is hereby waived.

"4. It is further agreed that the principal controversy in this case is, whether there is a vacancy between the west line of the Caleb W. Baker survey and the east line of the John Pharrass survey in Williamson County subject to appropriation by pre-emption."

The trial without a jury resulted in judgment for plaintiff, and the case is here by writ of error. Under the two assignments of error presented but one proposition is made, and that is, "The judgment on the facts in evidence should have been for defendants and against the plaintiff."

The Caleb W. Baker is one of four surveys, each for three-fourths of a league and a labor, made by Halderman, deputy surveyor of Milam County, in June, 1839, adjoining each other from west to east. The Samuel Pharrass, being the most westerly and the first one of the four surveyed, is numbered 1; the William J. Baker lies east of the Samuel Pharrass, the John Pharrass lies east of the William J. Baker, and the Caleb W. Baker

lies east of the John Pharrass. It appears from a map in evidence, made by James Howlett, surveyor of Milam Land District, and dated November 1, 1839, that three unnamed surveys of dimensions corresponding with the two Pharrass and the two Baker surveys are situated south of and adjoining a tier of league and labor surveys, also unnamed, numbered from east to west from 8 to 12 consecutively, the west one of the three unnamed surveys first mentioned being south of the unnamed league and labor survey No. 11.

There also appears on this map an unnamed and unnumbered survey in the shape of an L of about the proper dimensions to include a league and labor, situated west of the south end of league and labor survey No. 12, and extending east across the south end of that survey, and abutting on the west side of the north end of the three-fourths league and labor survey delineated on the map just south of the league and labor survey No. 11, the east end of the L-shaped survey extending down more than half the distance from the northwest corner of the survey situated south of the league and labor survey No. 11, putting the southeast corner of the L-shaped survey on the western line of the survey situated south of the league and labor survey No. 11.

It appears from a map of Milam Land District, compiled by Robt. Creuzbaur about 1848, that the Silas Palmer league and labor certificate had been located on the league and labor survey numbered 12 on the Howlett map of 1839; that the Wm. Ashworth certificate for a league and labor had been located on survey No. 11; that the Yett certificate for a league and labor had been located on survey No. 10; that the McFaden league and labor certificate had been located on survey No. 9; that the L-shaped survey on the map of 1839 had been covered by surveys in the names of different persons; that the Samuel Pharrass survey is numbered 1, and situated just south of and adjoining the Wm. Ashworth league and labor survey No. 11; that the W. J. Baker survey is numbered 2, and situated just south of and adjoining the Yett league and labor survey No. 10; that the John Pharrass survey is numbered 3, and situated just south of the McFaden league and labor survey No. 10—these three surveys appearing in the map of 1848 in the same position and relation to the league and labor surveys just north of them as is shown by the map of 1839. The Caleb W. Baker also appears on the map of 1848 as situated just east of and adjoining the John Pharrass survey No. 3, its southwest corner being a little north of the Pharrass southeast corner. The league and labor surveys are the same width east and west as the two Pharrass and two Baker surveys. The field notes of the Samuel Pharrass survey No. 1 call to begin at the southeast corner of league and labor No. 5, which we understand to be the L-shaped survey shown by the map of 1839; thence south 19 east at 302 varas a branch, at 2802 another branch, at 2856 varas a stone mound; thence north 71 east at 734 varas a branch, at 2240 varas Battle

Ground Creek, at 3333⅓ varas a stone mound; thence north 19 west 5925 varas the southeast corner of league No. 11; thence south 71 west 3333⅓ varas to the southwest corner of league No. 11; thence south 19 east 3069 varas to the beginning. These calls fit the position of the L-shaped survey so as to identify its southeast corner as the beginning corner of the Samuel Pharrass survey. The branches delineated on the map of 1839, and also on a map in evidence of the Milam Land District made in 1856, are approximately at the distances called for in the field notes of the Samuel Pharrass survey.

The field notes of the W. J. Baker survey No. 2 call to begin at the southeast corner of the Samuel Pharrass survey No. 1; the field notes of the John Pharrass survey No. 3 call to begin at the southeast corner of the W. J. Baker survey No. 2; and the field notes of the Caleb W. Baker survey No. 4 call to begin on the east boundary line of survey No. 3, thence north 71 east 3333⅓ varas a mound for the southeast corner; thence north 19 west 5925 varas the southeast corner of league No. 8 for the northeast corner; thence south 71 west at 3333⅓ varas the southwest corner of league No. 8 for the northwest corner; thence south 19 east 5925 varas the beginning. The McFaden league and labor survey is on league survey No. 9, as delineated on the map of 1839, just north of the John Pharrass survey and west of league survey No. 8.

The northeast corner of the Caleb W. Baker survey was found to conflict with an older survey, and its field notes were corrected to read as follows: Beginning at a stone mound the southeast corner of the John Pharrass survey (bearings); thence north 71 east 3333 varas to a stone mound; thence north 19 west 5399 varas to a stake in the south line of the Pedro Garza six leagues survey; thence north 70 west with said line 837 varas to the southeast corner of the Milholm survey to a stone mound; thence south 71 west with the south line of said Milholm survey 2683 varas to a stone mound the southwest corner of said Milholm survey; thence south 19 east with the east line of said Pharrass survey to the beginning.

The patent to the C. W. Baker was issued on these corrected field notes on the 24th day of September, 1873.

The field notes of the Milholm call for its southwest corner at the southeast corner of the McFaden, the Milholm and other surveys having taken the place of league survey No. 8 as shown on the map of 1839. It seems that the southwest corner of the Milholm, which is called for as the northwest corner of the C. W. Baker, is 448 varas east of the northeast corner of the John Pharrass; or in other words, to run the distance called for from the west line of the Samuel Pharrass east to the east line of the John Pharrass, giving to the Samuel Pharrass, the W. J. Baker, and the John Pharrass the width of 3333⅓ varas each, as called for in the field notes,

the east boundary line of the John Pharrass would be 448 varas west of the southwest corner of the Milholm.

Several surveyors testified that they had never been able to find the southeast corner of the John Pharrass survey. The map of 1839, the map of 1848, the map of 1856, and the map in use in the General Land Office at the time of the trial all show that the east line of the John Pharrass is the west line of the Caleb W. Baker. The field notes of the original surveys made in June, 1839, of the four surveys, beginning on the west with the Samuel Pharrass and ending on the east with the Caleb W. Baker, establish very satisfactorily to our minds the fact that the original surveyor intended that there should be no vacancy left between these surveys; and that intention is manifest also by the acts of the officers of the State in making the corrected field notes and issuing patent thereon for the Caleb W. Baker, making the east line of the John Pharrass the west line of the Baker.

In Boon v. Hunter, 62 Texas, 589, it is said: "The language used in the patent must be considered with reference to the understanding of the parties at the time it issued as 'to the true locality of the several surveys mentioned in it, if this understanding can be clearly arrived at; for otherwise we do not arrive at the real intention of either the grantor or grantee, which in cases of this kind is the real and important question."

"It is evident that the officers of the State, having the map before them which was in use at the time the location was made, field notes made out and returned, and the patent issued under which the appellant claims, did not intend to nor believe that they were patenting land in the locality in which the Hughson survey would be placed, * * * for the maps did not show them to be so located; and besides, to so locate it would be to place it on land which the maps showed had been appropriated by other persons." Morrill v. Bartlett, 58 Texas, 648.

The applications of Cox and Standlee to acquire the strip of land as homestead donations were made October 9, 1886, a little over forty-seven years after the original surveys and field notes were made, during all of which time the State and the respective owners of the John Pharrass and the C. W. Baker surveys acted upon the view that no vacancy existed between them, and that the east line of the former was the west line of the latter.

As was said by this court in Freeman v. Mahoney, 57 Texas, 626: "He who at this late day, when lands have become valuable and those who originally surveyed them have passed away, makes a location between grants which surveyors who originally surveyed them more than thirty years ago under their official oaths declared to be contiguous, should come prepared with evidence which will clearly show that such declarations were made in mistake, and such testimony must consist of something more than

that one or both of the grants will be slightly in excess of the area called for to make such declarations good."

The question presented here is purely one of fact, and we think the evidence abundantly sustains the conclusion of the trial judge.

We are of opinion that the judgment of the court below should be affirmed.

*Affirmed.*

Adopted December 2, 1890.