JOEL C. FENLEY v. B. C. FLOWERS.

No. 50.

**Boundaries — Evidence.** — Where a survey is not actually made on the ground, but platted with reference to other surveys which are actually made and marked on the ground, and the boundaries of which are undisputed, such surveys actually made will govern the calls of the survey thus platted; and parol evidence inconsistent with the calls of the surveys made on the ground is inadmissible to contradict those of the survey platted.

APPEAL from Uvalde. Tried below before Hon. T. M. PASCHAL.

*Willett & Willett,* for appellant.

*Clark & Old,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is a suit of trespass to try title, brought by the appellee against appellant, to survey number 9, in the name of J. V. Massey, situated partly in Uvalde and Kinney Counties. The appellant answered by pleading not guilty, and the statute of limitations of five and ten years. There was no question of title; the sole question being one of boundary of surveys numbers 9 and 7 of the same block, it being admitted that appellee owned the former and appellant the latter survey, the appellant claiming that the true location of his survey in the block was that claimed by the appellee as the position of his. The case was tried by the court without a jury, and judgment rendered for the appellee, from which this appeal was taken.

The court filed its conclusions of fact in the case, which we have examined very carefully, in connection with the statement of facts con-

tained in the record, and having from such examination found them correct, adopt them as our own.   They are as follows, viz.:

" 1.  That plaintiff is the legal owner and entitled to the possession of survey number 9, block number 19, containing 640 acres, as surveyed for J. V. Massey, as shown by regular chain of transfer from the patent down to himself, and as admitted upon the trial by defendant and his counsel; and that defendant is the legal owner and entitled to the possession of survey number 7 of same block of surveys, as shown by his regular chain of title from the patent to himself, and as admitted upon the trial by plaintiff and his attorneys.

" 2.  I find from the admission of both parties upon the trial, that this controversy is as to the true location of survey number 9 claimed by plaintiff, as described in his petition; defendant claiming that to be the location covered by number 7, as claimed by him.

" 3.  I conclude that the block of surveys, known as International & Great Northern Railway Company block number 3, was located by an actual survey upon the ground by F. M. Maddox, deputy surveyor for Bexar District, on the 6th day of July, 1875, and the field notes of same duly returned into the Land Office; said block consisting in part of surveys 97, 98, 99, 100, 104, 105, 106, 107, and 108, as shown upon the maps in evidence, and that by said maps the said surveys are correctly located as upon the ground; and that survey number 105 was located by actual survey upon the ground by said surveyor, and that its true position is correctly shown upon said map, and that its true position is and has been known and recognized by all parties since its location, and can be easily identified upon the ground from its calls made from an actual survey, and as admitted upon the trial by both plaintiff and defendant.

" 4.  I conclude, as a fact, that on the 14th day of February, 1876, F. M. Maddox, still acting as deputy surveyor of Bexar District, surveyed a base line by beginning at the northwest corner of survey number 20, block number 1; that he run thence north 1900 varas, and designated the point by calling for fixed bearing trees; that he then continued on north 1900 varas further, and marked that point by calling for fixed bearing trees; that he then run north 45 degrees west 2687 varas, and marked that point, calling for fixed bearing trees and other objects; that he then run west one mile, marking the place by fixed bearing trees; that he then continued west one mile further, and marked that corner, designating same by calling for pile of rocks on north side of neighborhood road; and then continuing on west, at the end of next mile he marked this point by calling for pile of stones and bearing trees; and then continued on west another mile, and marked the place by calling for a stone mound 2½ feet base and 2½ feeet high; thence west at another mile, and marked the place by calling for a stake, from which a bearing tree was marked; thence west

another mile, and marked the place by calling for a stone mound $2\frac{1}{2}$ feet base and $2\frac{1}{2}$ feet high; and on west at another mile, marking the place by calling for a stone mound $2\frac{1}{2}$ feet high and $2\frac{1}{2}$ feet base.    And that he still continued on west several miles further, marking each mile by calling for different objects.    I also find that at the same time he made a connection with the Catlett league by an actual survey; and I further find that said base line can now be easily traced and identified by the calls made in the same.

"5.  I further find, that afterwards, to-wit, on the 3rd day of March, 1876, that block number 19, J. V. Massey, surveys numbers 1 to 10 inclusive, were located by John W. Maddox making out in his office the field notes from data given him by F. M. Maddox; and I further find, that he located surveys numbers 1 to 4 inclusive by calling for bearings at their corners as given at their respective places on said base line run by F. M. Maddox.    I find that in making the field notes of number 5 of said block number 19, that he left said base line and located said survey by calling to begin at the southwest corner of number 4 in said block, and by calling for number 106 of block 3, International & Great Northern surveys, placing said survey number 5 adjoining and west of 106 and southwest of survey number 4 of block number 19; and that he made the field notes of number 6 of block 19 by calling to begin at the northwest corner of 105, block number 3, also calling for bearing trees at that corner, which trees were not marked at that time, and which were not marked for the purpose of locating said survey number 6; that said bearing trees were situated at the common corner of 98 and 99 of block 3, International & Great Northern surveys, and the southwest corner of said number 6, and that said trees were marked at the time of the survey of numbers 98 and 99, and for the purpose of identifying the corners of the same, and that they were called for from memory in making the field notes of number 6, and that they were called for by a mistake, and that survey number 6 was placed adjoining and west of 105 of block 3 and adjoining and north of 99, same block.    And I find that survey number 7 was constructed on number 6 by course and distance, and joins and lies just west of it; and that number 8 was constructed on number 7 by calls for course and distance, and joins and lies north of it; and that number 9 was constructed upon number 8 by calls for course and distance, and joins and lies west of it; and that number 10 was in the same way constructed upon number 9, and lies just south of it; which places number 9, the tract claimed by plaintiff, in the position claimed for it by plaintiff.    I find that surveys numbers 5, 6, 7, 8, 9, and 10 were not actually surveyed upon the ground, and that none of them have corners established upon the ground; that none of them call for any bearings or other objects called for on said base line; and I find that in said surveys they call at the cor-

ners in the field notes for mounds, and that they were not established on the ground.

"6. I further find, that all the land west of number 4 of block number 19, and on said base line as far as the vacant land extended, is rough, poor, and indifferent, and that all the land appropriated by said surveys according to the field notes is superior land to that west of number 4 on said base line. I further find, that to have made said surveys as claimed by defendant, there would have been left vacant land both to the south and north of the block being located. And I further find that to have so made said surveys would have placed survey number 10 of said block number 19 in conflict with the Catlett league, which had been previously located, and that the same would be contrary to every call in the field notes. I further find that it was not shown that the surveyor, F. M. Maddox, returned to the Land Office with his field notes of block number 19, or at any other time, the field notes of said base line, or made record of same. And I further find from the circumstances, taken with the testimony of F. M. Maddox, that he did not at the time of testifying in this case have any clear and distinct recollection or knowledge of how said surveys 5, 6, 7, 8, 9, and 10 were intended to be made."

*Conclusions of Law.*—From these findings, the judgment for appellee is obviously correct. "The rules upon the question of boundary are only invoked when the calls of the survey lead to different results. Then those calls must be adopted which are most consistent with the intention apparent upon the face of the grant, or the presumed intention of the grantor. Hence the rule, that the most material and certain calls will control those which are less certain and material, because those are supposed to be the most prominent in the mind of the grantor, and hence a call for a natural object, as a river, a known stream, a spring, or marked tree, will control course and distance. But that is where the actual survey can be found and identified as the same called for in the grant. It is not meant that where the grant calls for certain known and established natural or artificial monuments or boundaries, these may be controlled by parol proof of a survey entirely inconsistent and repugnant to all the calls of the grant. That would be virtually to destroy the written evidence of title, and substitute parol evidence in its stead." Anderson v. Stamps, 19 Texas, 465.

In making the surveys in block 19, none of them were actually made on the ground, but all were plotted by the surveyor in his office; those from 1 to 4 in reference to the base line described in the finding of facts, and those from 5 to 10 inclusive in reference to the northwest corner of number 105, block 3, which is called for as the beginning corner of survey number 6; then number 7 begins on number 6, number 8 on 7, number 9 on 8, which places the land in the position claimed by appellee.

The trees called for as on the northwest corner of survey 105 are not there or on said survey at all, but are found one mile west of its southwest corner, at the northwest corner of 99, which is the northeast corner of 98, which was the established corner of said surveys.    The surveyor in locating the surveys in block 19, did not go to these trees, but called for them from memory, and admits that he was mistaken as to their location, and that they were in fact south of where he thought they were when the field notes of the surveys of block 19 were made out in his office.    No claim being made that he was mistaken as to the true location of survey number 105, block 3, and its true location being certain and admitted by the parties, leaves it the true beginning corner as intended.    To hold different would be to contradict every call in the field notes, and place the surveys in conflict with older locations made by the same surveyor, which was certainly not his intention.

Errors are assigned to the exclusion of certain testimony and to the admission of other evidence.    If the testimony excluded had been admitted, and the evidence admitted rejected, as contended for by appellant, the result of the trial could not have been different.

There is no error in the record, and the judgment of the District Court is affirmed.

*Affirmed.*

Delivered November 1, 1893.