### H. W. WILLIAMS ET AL. v. J. J. BECKHAM.
### No. 208.

**1. Boundaries—Field Notes—Course and Distance.**—Where there is a call in the field notes of a younger survey for the west line and southwest and northwest corners of an older survey, the west line of such older survey can not · be run at a different variation than that called for in its field notes to reach an unmarked tree which can not be clearly identified as the original corner. In such case the west line of the older survey should be run at its proper course and distance.

**2. Same.**—See opinion giving reasons for the holding that the identity of a tree relied upon as fixing the northwest corner of the McIntire survey is not sufficiently identified to require a change in the variations of the lines of that survey as fixed by surveyors more than fifty years ago.

APPEAL from Limestone. Tried below before Hon. RUFUS HARDY.

*W. A. Kincaid* and *L. J. Farrar*, for appellants.—1. When the natural or artificial objects called for by any line or corner of a survey which is one of a block of contemporaneous surveys, made by the same surveyor, can not be certainly identified, such line or corner should be located by course and distance from and in conformity with other well defined lines and corners in such block of surveys. Browning's Admr. v. Atkinson, 37 Texas, 633; Anderson v. Stamps, 19 Texas, 460; Clement v. Packer, 8 Sup. Ct. Rep., 907; Robertson v. Brooke, 43 Am. Dec., 321; Hubbard v. Dusy, 80 Cal., 281; Wilson v. Hildreth, 118 Mass., 578.

2. When the true location of the lines or corners of a survey becomes uncertain, the known lines or corners of surrounding subsequent surveys should be looked to in aid of such location. Freeman v. Mahoney, 57 Texas, 621.

3. When the bearings called for at one extremity of the line of a survey are standing, the configuration of the survey should be preserved by

locating the corner at the other extremity by course and distance from the known corner, unless the evidence shows clearly that the objects called for at such point exist or have existed at a different place. Booth v. Strippleman, 26 Texas, 436; Browning's Admr. v. Atkinson, 37 Texas, 633; Hubbard v. Dusy, 80 Cal., 281; Wilson v. Hildreth, 118 Mass., 578; Phillips v. Ayres, 45 Texas, 601.

4. When a junior survey calls for two corners of an adjoining senior survey, one of which corners is marked by its bearing, and none of the other corners of the junior survey, nor any of the adjacent corners or lines of the surrounding surveys, can be identified by any natural or artificial calls, it is error to disregard the call of the junior survey for the marked corner of the senior survey and establish a vacancy between them. Standlee v. Burkitt, 78 Texas, 616; Booker v. Hart, 77 Texas, 146; Freeman v. Mahoney, 57 Texas, 621.

*Thomas J. Gibson*, for appellee.

LIGHTFOOT, CHIEF JUSTICE.—The following statement in appellants' brief is not controveted, and is found to be correct:

On December 19, 1890, plaintiff filed his original petition in the District Court of Limestone County, alleging that the land described therein, 225 acres, was a part of the vacant public domain of the State of Texas, and subject to location and purchase at $2 per acre, under the Act of March 29, 1887, and acts amendatory and supplemental thereto; that he had had said land surveyed and the field notes thereof mapped and recorded and returned to the General Land Office, and had paid into the State treasury the amount of the purchase money therefor, and presented the receipt of the State Treasurer therefor to the Commissioner of the General Land Office, all within the time prescribed by said acts; that defendant Williams had filed in the Land Office a protest against the issuance of a patent to him for said land, claiming that if same was vacant, he, Williams, had a preference right to purchase. That on October 28, 1890, said Williams conveyed said land to his codefendants, M. E. and E. W. Hawkins. That said deed is a perpetual cloud upon plaintiff's title, and a continuing obstruction to the issuance to him of a patent for said land. He prayed that the said land be declared vacant and subject to his application to purchase, that said deed be ordered delivered up and cancelled, and that defendant's claim to said land be declared to be of no effect, and that a copy of such decree be furnished the Commissioner of the General Land Office for his guidance.

Defendants demurred to plaintiff's petition, and disclaimed any interest in the land described therein, except such portion thereof as might be included in the following boundaries, to-wit: Beginning at the northwest corner of the Robert McIntire survey, a stake on the south line of the

A. Steele survey; thence south 60° west 500 varas to said Steele's southwest corner; thence south 30° east 2553 varas to stake on the north line of William Rice's 1476 acres tract; thence north 60° east 500 varas to stake, the northeast corner of said tract; thence north 30° west 2553 varas to the beginning; and as to such portion they answered by general denial and not guilty.

The real question in the case was one of boundary, the plaintiff claiming that the east line of the A. Bass survey, though calling to be with the west line of the Robert McIntire one-third league survey, was in fact actually located 440 varas west of the west line of the McIntire survey, and that the intervening space was vacant land, and subject to his application to purchase. The theory of defendants was, that the east line of the Bass and west line of the McIntire were identical, and that there was no vacant land between the two surveys. On this issue the case was submitted to the court, and judgment was rendered establishing the northwest corner of the McIntire survey very nearly as claimed by plaintiff, and the southeast corner of the Bass as claimed by him, and establishing the west boundary of the McIntire on a diagonal line connecting these two points, and fixing the east line of the Bass north 30° west from its southeast corner; so establishing and finding the triangular piece of land lying between McIntire's west line and Bass' east line so established, vacant land, and subject to plaintiff's application to purchase; and this appeal is brought to reverse said judgment.

Appellants' first assignment of error is as follows: "The court erred in its judgment in fixing the northwest corner of the Robert McIntire survey from the post oak tree claimed by plaintiff as one of the bearing trees called for at that corner, and in running its west line diagonally from said corner so located to a point 400 varas north 60° east from the northwest corner of M. Rockerfellow survey, because the evidence shows that the northwest corner of the McIntire so located is only 2180 varas south 60° west from the Navasota River, when it should be 2587, according to the call in McIntire's field notes, running from its northeast corner; and because it is too far north 60° east to correspond with the admitted southwest corner of the Constantine Buckley or William Rice survey, the undisputed southwest corner of the Robert McIntire league survey, the southeast corner of the F. W. Geisendorff, the southeast and southwest corners of the John Robinett, and the southeast corner of the James Gillespie survey; and because the evidence fails to show that said post oak tree is the one called for by McIntire at said corner, or that it is marked as a bearing tree; and because the testimony of T. J. Oliver shows that the post oak tree called for by McIntire at his northwest corner stood at a point about 400 varas west from the one now claimed by plaintiff. Said corner of McIntire should have been located at the point where T. J. Oliver

testified he found it in 1857, at which place it would correspond with the known southwest corner of the Buckley or Rice, the standing southeast corner of the Geisendorff, the southeast and southwest corners of the John Robinett, and the southeast corner of James Gillespie, and would practically fit the call for McIntire's north line for the Navasota River, and its west line should have been run south 30° east from its northwest corner so located.''

The appellee claimed a tract of about 225 acres of land in the shape of a parallelogram, 440 varas wide by 2887 varas long, which was claimed as vacant land lying between the A. Bass and Robert McIntire surveys. The court below found, for plaintiff (appellee) for about half the land claimed, establishing the southwest corner of the McIntire and the upper southeast corner of the Bass at the same point, but running the west line of the McIntire upon a diagonal line, not called for in its field notes, to a point at the northeast corner of the parallelogram claimed by plaintiff, thereby establishing a vacant piece of land in the shape of a right-angled triangle, with the east line of the Bass survey as one of its base lines and the west line of the McIntire as its hypothenuse.

1. The Robert McIntire is an old survey, made October 30, 1839; the A. Steele was made October 29, 1839; the William Rice, or C. Buckley, October 28, 1839; and the A. Whitaker, October 29, 1839. The Ambrose Bass was made in 1857, by T. J. Oliver, and calls for the southwest and northwest corners of the McIntire, and to run north 30° west with its west line. These calls are made not only in the original survey made by Oliver in 1857, but also by S. G. McLendon, who made the corrected survey September 20, 1860, upon which patent was issued; the only difference between the two surveys at that point being this: that the former placed the upper southeast corner of the Bass and the southwest corner of the McIntire 319 varas north 60° east of the northwest corner of the Huling (Rockerfellow) survey, while McLendon placed said corner 400 varas. north 60° east of the northwest corner of the Rockerfellow survey. But in each survey the Bass east line hugs the McIntire west line, and calls for its southwest and northwest corners. The following diagram will give an idea of the lines:

The court below finds the Bass east line to run north 30° west to the south base line of the A. Steele survey; and although the McIntire survey was made in 1839 and calls for the same variation, north 30° west to the south line of the A. Steele, the court runs this line at a wholly different variation, thereby shortening its north line 440 varas, in order to reach a post oak tree near the south line of the Steele, which the evidence does not show to be marked as a corner tree. Is the testimony sufficiently strong to justify this variation or separation of these lines? We think not. Where there is a call in the field notes of a younger survey for the west line and southwest corner and northwest corner of an older survey, the west line of such older survey can not be run at a different variation than that called for in its field notes, to reach an unmarked tree which can not be clearly identified as the original corner. In such a case the west line of the older survey should be run at its proper course and distance. Anderson v. Stamps, 19 Texas, 460; Browning v. Atkinson, 37 Texas, 633.

2. The court below finds the southwest corner of the McIntire and the southeast corner of the Bass to be the same. We shall not undertake to disturb this finding. It finds the northwest corner of the McIntire to be 440 varas from the most eastern northeast corner of the Bass survey.

This we do not believe to be correct, or supported by the testimony. We have carefully examined and compared all the field notes of the surrounding surveys, in connection with the testimony of the witnesses, and conclude that the west line of the McIntire is the east line of the Bass, and that there is no vacant land between the two surveys subject to location or purchase. Freeman v. Mahoney, 57 Texas, 621.

3. The identity of the post oak tree, upon which the court below seemed to rely in fixing the northwest corner of the McIntire, we do not think sufficient to call for a change in the variations of the lines of that survey as fixed by the old surveyors, more than fifty years ago, for the following reasons, viz.:

First. Because the tree seems to have been recently marked, and while spoken of by some of plaintiff's witnesses as a marked tree, they did not explain how it was marked, and it was proved by T. R. Todd, a surveyor, and other witnesses (and not controverted) that this tree "has only two marks on it, one of them a small blaze and the other a short perpendicular cut, which appears to have been made simply by sticking an axe into the tree. They are not such marks as surveyors make in marking bearing trees."

Second. Because it was clearly shown that the south line of the A. Steele, upon which this corner rests, is a well marked and well defined line, running much of the way through the timber, and that this post oak tree, not marked as a bearing tree, is 30 varas south of this line.

Third. Because T. J. Oliver, the surveyor who located the Bass survey in 1857, testified positively that he found the oak tree called for at the northwest corner of the McIntire, and upon which he fixed the most eastern northeast corner of the Bass; that this tree was a bearing tree at the time, and was hollow, and had a large hole in it, and its subsequent destruction was shown by the evidence. This tree was about 400 yards west of the tree claimed by plaintiff as the corner. The natural object called for as a corner being destroyed or uncertain, the call for course and distance from an established corner should prevail. Booth v. Strippleman, 26 Texas, 436.

Fourth. Because in the establishment of this corner, the south line of the A. Steele is a well marked line. The northeast corner of the McIntire begins on the A. Steele south line, and runs with it 300 varas to the Navasota River, a well established natural object; thence continuing with said south line of the A. Steele in all 2886 varas, the river being six varas wide, which would make 2580 varas from the river to the northwest corner of the McIntire; and to fix the corner as claimed by appellee and as fixed by the court below, it would be only 2180 varas from the Navasota River, which would be too short by about 400 varas. In other words, the proper distance measured on this marked line from the Navasota River, as shown by appellee's own witness, would be about the old cor-

ner fixed by Oliver at the old post oak tree, which was destroyed, and about 400. yards west of the corner claimed by appellee.

Fifth. Because the original south line of the A. Steele survey as made in 1839 shows that its southwest corner is 2900 varas west of the Navasota River; the northwest corner of the McIntyre is shown by its field notes to be 2580 varas on the same line from the river, which, according to these old surveys as made by the same surveyor (Sewell), one on October 29, 1839, and the other on October 30, 1839, would place the southwest corner of the Steele 320 varas west of the northwest corner of the McIntire.

But according to the survey made by Roark, appellee's surveyor, as testified to by him, and also by Tyus, Todd, and others, they began at the well established northeast corner of the Cruger survey and ran south 30° east to intersect the south line of the A. Steele, and at the intersection of these lines was the southwest corner of said A. Steele survey, which proved to be exactly 2900 varas from the Navasota River, the distance called for in the original field notes made by Sewell in 1839, thereby proving the Steele southwest corner. If they had run thence north 60° east 320 varas, they would have been near the northwest corner of the McIntire as originally fixed by Sewell in 1839, according to the field notes of those old surveys. But instead of this, they ran from the southwest corner of the Steele, as located by them, *710 varas*, and reached a point north 30° west 30 varas from the point claimed by appellee as the northwest corner of the McIntire. The survey claimed by appellee is manifestly wrong, and the lines run by his own surveyors show it.

We might pursue the subject further, and prove these lines by other surveys made, but we deem it unnecessary to do so. The west line of the McIntire and the east line of the Bass being the same, there can be no vacant land between them. Standlee v. Burkitt, 78 Texas, 616

The judgment is reversed and rendered for appellants.

*Reversed and rendered.*

Delivered March 14, 1894.