## GUILLORY et al. v. ALLUMS.

(Court of Civil Appeals of Texas. Galveston. May 5, 1912. Rehearing Denied May 23, 1912.)

1. PUBLIC LANDS (§ 175*)—SURVEYS—CONFLICTS.

Where surveys are in conflict, the junior survey must yield to the senior survey to the extent of the conflict.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 555–570; Dec. Dig. § 175.*]

2. EVIDENCE (§ 387*) — PAROL EVIDENCE — PUBLIC GRANTS — SURVEYS — CALLS IN GRANT.

Where the field notes in a survey call for the corners and lines of surrounding surveys, and contain no inconsistent calls, it is not admissible to show by parol that a different survey was actually made, to control the calls in the grant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1698–1713; Dec. Dig. § 387.*]

3. EVIDENCE (§ 460*) — PAROL EVIDENCE — SURVEYS—CALLS IN GRANT.

Where a corner is found on the ground having bearings as called for in a patent, and such corner is shown to be a corner of the land as actually surveyed, an inconsistency between the call for the corner and the call for the bearings may be explained by parol; and the actual survey must control.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. § 460.*]

4. PUBLIC LANDS (§ 175*) — GRANTS — CONFLICTS.

Evidence held to justify a finding of a conflict in surveys of public lands, so that, to the extent of the conflict, the junior survey must yield.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 555–570; Dec. Dig. § 175.*]

5. NEW TRIAL (§ 102*) — GROUNDS — NEWLY DISCOVERED EVIDENCE.

It is not error to refuse a new trial on the ground of newly discovered evidence which would not compel a different finding, especially where sufficient diligence to discover the testimony is not shown.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 207, 210–214; Dec. Dig. § 102.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Action by J. J. Allums against Nevil Guillory and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Jno. L. Little, of Kountze, and V. A. Collins, of Beaumont, for appellants. D. F. Singleton, of Kountze, and Smith, Crawford & Sonfield, of Beaumont, for appellee.

McMEANS, J. Appellee, Allums, brought this suit against appellant Guillory to recover section No. 282 of the Houston, Tap & Brazoria Railroad survey of land situated in Hardin county.

Appellant Guillory answered by general denial and plea of not guilty, and specially pleaded the statute of limitation of three years, and by cross-action sought to have the patent to said section 282 canceled, in so far as the same conflicts with the John Gibson survey, a part of which is claimed by appellant. While the suit is in the ordinary form of trespass to try title, the issue presented is one of boundary only. The case was tried before the court, without a jury, and resulted in a judgment for appellee, from which the appellant has appealed.

[1] Appellee owns said section 282, and appellant claims to own land on the John Gibson survey. These surveys, according to the corrected field notes, are in undoubted conflict; and appellants so admit in their brief, as well as in an agreement made by the parties before the trial and introduced in evidence. It is also admitted that the said section 282 is the older survey; and it follows that, to the extent of the conflict, the Gibson survey must yield. Appellant contends, however, that the field notes of section 282, as they existed prior to making corrected field notes on May 4, 1904, and as said survey was originally located on the ground, are not in conflict with the John Gibson; and that the Gibson, at the time the certificate was laid upon it, was vacant and unappropriated public land. The only question we are called upon to decide on this appeal is whether the evidence authorized the conclusion reached by the trial court that the surveys, as originally located, were in conflict.

The undisputed evidence shows that the surveyor Dark, who made the original survey No. 282, was locating lands generally for the Houston, Tap & Brazoria Railroad Company, which held the certificate; and that he located a tier of four surveys, Nos. 277, 278, 281, and 282. The first survey made was No. 277, and this was the most western of the four, and tying on to it was 278, and on to 278 was 281, and tying on to it was section 282. The field notes of 277 call to begin "1,900 varas due east from the northeast corner of a 320-acre survey and the southeast corner of another 320-acre survey made for Lawrence & Creacy, set a stake for corner at the southeast corner of George Ryan survey and the northwest corner of Richard Jones survey," and giving the direction and distance of certain bearing trees. The line ran thence north 1,900 varas, and each of the four lines of the survey is of the same length.

The John Gibson survey, according to appellants' contention, lies immediately east of section 282; but, according to the contention of appellee, is embraced wholly within section 282. It is clear from the maps and other evidence introduced on the trial that, if survey No. 277 actually began at the southeast corner of the George Ryan and northwest corner of the Richard Jones survey, the distance from its east line to the east line of 282 would not be sufficient to bring the latter in conflict with the Gibson as it was

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

actually located on the ground and described by field notes. So the controlling question is: Does the evidence justify a finding that, in making the original survey, the surveyor actually began at a point other than that called for by the field notes? On this point, the witness Pedigo testified that he had been surveying land in Hardin county for 30 years, and lived within two or three miles of these surveys all the time; that he was familiar with the south line of the tier of sections as located by Dark, had been on them and seen them often; that Dark's lines were marked on the ground, and that the south line of the sections was a common lne, extending from the southwest corner of section 277 to the southeast corner of section 282. He said that, while Dark's field notes of section 277 called to begin 1,900 varas due east from the common corner of the two 320-acre Lawrence & Creacy surveys, the field notes in that respect were not correct; that Dark did not find that corner of the Lawrence & Creacy surveys at all, and that it was not where Dark thought it was, and that "he missed it;" that, while the field notes of Dark call to begin 1,900 varas due east from the common corner of the two surveys of Lawrence & Creacy, as a matter of fact he was 1,344 varas north and about 1,091 varas east of it. He explained how Dark happened to make the mistake by saying that in 1840 a deputy surveyor incorrectly located a corner for the common corner of the Lawrence & Creacy surveys, which was 1,344 varas south of the real corner, and same distance east, and that Dark went to that corner in locating the tier of surveys, including the one in controversy, and that section 282, as thus laid out by Dark on the ground, conflicts with the John Gibson survey claimed by appellant. He further testified that he first became acquainted with the boundaries of the George Ryan, Richard Jones, and section 277 in 1881; that these boundaries at that time were well defined, no timber had been cut, the marks were all there, and the lines could be easily seen; that he found the southwest corner of section 277, 1,344 varas south of the common corner of the Ryan and Jones surveys and, he thought, 1,091 varas east; that when he went to the southeast corner of section 277 he had the field notes with him, and found the trees called for. He further said that section 282 conflicts with the whole of the Gibson and slightly with the Brown survey on its south. He testified further: "As to my finding the southwest corner of section 277, and as you say it was the northwest corner of the Richard Jones, well, no, sir; it is not the northwest corner of the Richard Jones, and I know the field notes won't say so; that is not the fact. I can go and show you both corners; that is what we were in the woods for—were there to find those corners." That there were two corners, the cor-

ner of the Richard Jones and the corner of section 277, but they are not together; that a line run directly east from the common corner of the two Lawrence & Creacy surveys would run right across section 277. The field notes of the tier of four sections show that they were tied to each other, based on section 277. The testimony of the witness McElyea in a large measure corroborates that of the witness Pedigo.

It will be seen that, in order to determine whether there was a conflict between the section 282 and the Gibson, it was essential to determine the exact location of section 277, as the other sections in the tier, ending with 282, are based upon it. The difficulty lies in determining whether said section 277 should be held to have its beginning at the southwest corner of the Ryan and the northwest corner of the Jones, called for in the field notes, in which event there could not be any conflict between section 282 and the Gibson, or whether the beginning corner should be held to be at the point testified to by the witness Pedigo, which he says was the real starting point, and identified as such by the witness trees called for in the field notes. If the latter should control, then the true beginning point is 1,344 varas south and about 1,091 varas east from the southwest corner of the Ryan and the northwest corner of the Jones.

[2] We hold, upon the authority of Converse v. Langshaw, 81 Tex. 275, 16 S. W. 1031, that the court correctly concluded that there was a conflict between section 282 and the Gibson survey, based upon the conclusion that the beginning point of section 277 was not at the southwest corner of the Ryan and the northwest corner of the Jones, but was at a point 1,344 varas south, and about 1,091 varas east of said corners. In the case cited, it is said: "In determining the question of the correctness of the court's finding that that corner of the survey as actually run should be deemed the corner called for in defendant's patent, we have had some difficulty. At an early day, it was held by this court, in Urquhart v. Burleson, 6 Tex. 502, that the calls in the patent in that case, as applied to the land, disclosed a conflict between them; and that those which correspond with the actual survey made should govern. The doctrine has been affirmed in numerous decisions since that time. But in Anderson v. Stamps, 19 Tex. 460, it was decided that when the field notes in a survey call for the corners and lines of surrounding surveys, and contain no inconsistent calls, it was not admissible to show by parol evidence that a different survey was actually made, for the purpose of controlling the calls in the grant. These two cases, when considered together, very clearly define the limits of the doctrine; and the principles announced in the opinions therein delivered are in accordance with the well-

established rules in reference to the admissibility of parol evidence to explain written contracts." Continuing with reference to the facts of the case before it, the court further on in its opinion said: "If the northeast corner of his [plaintiff's] land had been described by bearing trees, which were undoubtedly marked for its identification at the time the survey was made, it is clear that the survey as actually made should govern, and the call for the southeast corner of the Martin, which is also the southwest corner of No. 3, should have been rejected."

[3] Now, again referring to the evidence in this case, it will be remembered that the original field notes of section 277 call to begin at the southeast corner of the Ryan and the northwest corner of the Jones, giving the distance and direction of certain bearing trees. The testimony of the witness Pedigo shows that these bearing trees are to be found on the ground at a point 1,344 varas south and 1,091 varas east of the common corner of the Ryan and Jones surveys; hence an inconsistency existed between the call for the corners of the Ryan and Jones and the call for the bearing trees. The facts in Converse v. Langshaw are similar in this respect to the facts above stated, and upon this point the court said: "When, therefore, a corner is found upon the ground having bearings as called for in the defendant's patent, and this is shown to be the northeast corner of the land as actually surveyed, an inconsistency is disclosed which may be explained by parol evidence. The testimony in this case clearly showed that the calls for the corner of the Martin and of the Railway survey were the result of a mistake; and the actual survey should govern." See, also, Ayers v. Beaty, 5 Tex. Civ. App. 491, 24 S. W. 366.

[4] We think that this sufficiently disposes of all appellant's assignments of error which challenge the correctness of the court's judgment; and all said assignments, together with the several propositions thereunder, are overruled.

[5] We think no reversible error is pointed out in the assignment which complains of the refusal of the court to grant to appellant a new trial on account of newly discovered testimony. The testimony was that of Phillip Cotton, one of the chain carriers who was with the surveyor Dark when he made the survey for sections 277, 278, 281, and 282. His testimony, while important for appellant, would not have compelled a different finding by the court. We think that sufficient diligence to discover this testimony, and to have the witness present and testify, was not shown. The assignment is overruled.

We find no reversible error in the record, and the judgment of the court below is therefore affirmed.

Affirmed.