SWANN et al. v. MILLS. (No. 2237.) *

(Court of Civil Appeals of Texas. Texarkana. March 1, 1920. Rehearing Denied March 11, 1920.)

1. BOUNDARIES ⨺3(6)—WHERE LAND IS SOLD WITH REFERENCE TO CONTEMPORANEOUS SURVEY SURVEY MARKS BOUNDARIES.

Ordinarily, where land is sold with reference to a survey made at the time, the survey determines the true boundary and marks the limits of the land to be conveyed.

2. BOUNDARIES ⨺3(5)—EVIDENCE ⨺460(6)—ESTABLISHED LINE CALLED FOR BY DEED GOVERNS THOUGH SURVEY DID NOT CONFORM THERETO.

Where a deed conveying land with reference to an established line did not call for any objects, natural or artificial, conflicting with the true line, the grantee takes to the true line, though it did not correspond with a survey made at the time of the conveyance; for if the calls in a grant, when applied to land, correspond with each other, parol evidence is not admissible to vary them by showing that in point of fact they were not the calls of the survey as made.

3. VENDOR AND PURCHASER ⨺239(1)—BONA FIDE PURCHASER TAKES ACCORDING TO DESCRIPTION IN DEED REGARDLESS OF MISTAKE THEREIN.

Where the description of a deed to plaintiff's predecessor was a result of mistake, and it did not follow a survey then made, plaintiff, if a purchaser without notice, would take to the limits of the description in the deed, regardless of the rights of the vendor to have the deed reformed as against his predecessor.

4. TRESPASS TO TRY TITLE ⨺19—ACTION NOT DEFEATED BY OUTSTANDING EQUITY WITH WHICH DEFENDANTS DO NOT CONNECT THEMSELVES.

Though defendants' grantor, who was the common source of title, may have had an equity to reform a conveyance to plaintiff's predecessor, so as to make the description in the deed coincide with a survey made at the time of the conveyance, yet defendants, not having shown themselves connected with the equity, cannot, by reason of such outstanding equity, defeat plaintiff's action in trespass to try title to recover land included within the description.

5. APPEAL AND ERROR ⨺928(1)—PRESUMPTION THAT DEFENDANTS ACQUIESCED IN GENERAL CHARGE WHERE THERE WAS NO EXCEPTION.

Where there was no exception to a general charge, it will be presumed that defendants acquiesced therein, and special charges in conflict therewith were properly refused.

6. EVIDENCE ⨺129(1)—EVIDENCE THAT SURVEYOR DID NOT DISCOVER BREAKS IN OTHER SURVEYS INADMISSIBLE.

In trespass to try title, where it appeared that survey made when plaintiff's predecessor acquired title was erroneous, evidence that surveyor, in making survey of other tracts, never discovered any breaks in the line as claimed was immaterial and properly excluded.

7. APPEAL AND ERROR ⨺671(2)—BILL OF EXCEPTIONS TO EXCLUSION OF TESTIMONY SHOULD STATE GROUNDS.

A bill of exceptions to the exclusion of testimony cannot be sustained, where it failed to disclose the basis of the exception.

Appeal from District Court, Wood County; J. R. Warren, Judge.

Action by A. J. Mills against R. A. Swann and others. From a judgment for plaintiff defendants appeal. Affirmed.

Beavers & Wilkinson, of Winnsboro, for appellants.

M. D. Carlock and R. B. Howell, both of Winnsboro, for appellee.

HODGES, J. The appellee, Mills, brought this suit in the form of an action of trespass to try title to recover a tract of 82 acres of land described as a part of the R. E. Neil survey, situated in Wood county. In addition to the formal allegations usual in such actions, it was alleged that there had been a dispute between the plaintiff and the defendants regarding the west boundary line of this

tract of land; that during the summer of 1915 they had agreed upon a line marked out by surveyors selected for that purpose; that the defendants thereafter acquiesced in that line as being the true division between their tract of land and that of the plaintiff, but that, disregarding that agreement, defendants thereafter went upon the plaintiff's land and willfully and maliciously cut and destroyed a wire fence that had been erected by the plaintiff, thereby inflicting actual damages in the sum of $50; that by reason of the wrongful and malicious conduct in thus injuring the plaintiff's property he was entitled to recover exemplary damages in the sum of $1,000. The defendants answered generally and specially and disclaimed any interest in the land described in the plaintiff's petition except that particularly described as follows:

"Beginning at a point 50 feet east of an iron stake in road about 572 varas south or nearly south of the northwest corner of the R. E. Neil survey of land; thence south ——— varas, running on a variation of 920 east, to a point 105 feet east of an iron stake placed by R. E. Morris on the north bank of Big Sandy, continuing south ——— varas to Big Sandy creek; thence in a northwesterly direction with the meanderings with said creek about ——— varas to the aforesaid iron stake on the north bank of said creek; thence north or nearly north about ——— varas to the aforesaid iron stake set in the road; thence east about 50 feet to the place of beginning."

As to that tract the defendants pleaded not guilty. They also pleaded that a line had previously been surveyed between their tract, which lies in the Duncan survey, and that of the plaintiff, to which the plaintiff's grantor had consented, and therefore plaintiff was estopped from claiming west of that line.

It appears from the pleadings and the evidence that the R. E. Neil survey and the Duncan survey were adjoining tracts of land; the Neil lying east and the Duncan lying west of the line in dispute. It is conceded that the west boundary line of the Neil is the east boundary line of the Duncan. The controversy originated in a dispute as to the true location of the line between those two surveys. In 1900 that portion of the Neil survey which includes the land claimed by the appellee, Mills, was sold by Ingraham to Bellamy. In 1913 Mills purchased 153 acres from Bellamy; the deed containing the following description:

"All that certain lot or parcel of land situated in Wood county, Tex., and being a part of the Robert E. Neil survey; same being bounded as follows, to wit: Beginning at the southwest corner of the Myra Neil 100-acre tract, being 572 varas south of the N. W. corner of the R. E. Neil survey and on the W. B. line thereof; thence south with said W. B. line 943 varas to the S. W. corner of said Neil survey; thence east 894 varas to the corner in center of Stout's creek, the same being the S. W. corner of a tract formerly owned by Mrs. Spragging; thence in a northeasterly direction with the meanderings of said creek to the S. E. corner of said Myra Neil survey; thence west 1,000 varas to the place of beginning; containing 155½ acres of land."

The deed from Ingraham to Bellamy, Mills' grantor, contains the following description:

"All that certain tract or parcel of land, being 255¼ acres, from the Robert E. Neil survey of land in Wood county, Tex., about 10 miles east of the town of Whitman, and described as follows: Beginning on the N. W. corner of the said R. E. Neil survey; thence south 1,515 varas to the S. W. corner of said Neil survey; thence east 894 varas to corner in channel of Stout's creek."

Then follow other calls not necessary here to mention.

The appellants claim title to land situated in the Duncan survey adjacent to the tract claimed by the appellee. It further appears from the evidence that the sale by Ingraham to Bellamy in 1900 was made through an agent, J. A. Pogue, who was a surveyor. There being at that time some doubt as to the true location of the west boundary line of the Neil survey, according to Pogue's testimony, he made a survey and marked a line which he thought was the true west boundary line of that survey. He further testified that Bellamy was present and knew of the location of that line.

In submitting special issues the court, among other things, instructed the jury as follows:

"The first question in this case involves the location of the boundary line between the tract of land owned by plaintiff situated on the R. E. Neil survey and the tract of land owned by defendants lying immediately west of the land of plaintiff; and the true location of that portion of the west line of the R. E. Neil survey passing between plaintiff's and defendants' several tracts of land constitutes the boundary between the lands of the plaintiff and defendants."

After giving some other instructions he submitted the following interrogatory: "What is the true boundary line between the lands of plaintiff and defendants involved in this suit?" To this the jury answered: "We find the true boundary line and locate the same to be as described in the plaintiff's amended petition." The jury also found, in response to other issues submitted, in favor of the plaintiff for $20 actual damages and $100 as exemplary damages.

[1-4] Appellants' second assignment of error complains of the refusal of the court to give the following charge to the jury:

"I charge you as a part of the law in this case that if you find from the evidence that J. G. Bellamy, at the time he bought the land, a part of which is owned by plaintiff, was shown the west boundary line of same by John Pogue, and that said line was then marked on the ground, and that said Bellamy accepted same as his west boundary line, and as pointed out to

said Bellamy on the ground is the line claimed by the defendants as specified in their answer, then I instruct you to find for defendants the line described in their answer."

In the charge quoted, and others to the same effect, appellants sought to have the jury instructed, in substance, that if Pogue surveyed and established a line at the time Bellamy purchased, and that line was acquiesced in or accepted by Bellamy, the appellee, claiming under Bellamy, would now be estopped to go west of that line, even though the line traced by Pogue was not on the true line between the Neil and the Duncan surveys. The refusal of the court to give those instructions is the basis of a number of assignments of error, all involving practically the same question of law. The proposition relied on by the appellants is that, where a tract of land is sold with reference to a survey made at the time, the footsteps of the surveyor determine the true boundaries and mark the limits of the land intended to be conveyed. The correctness of that statement as the general rule in the location of boundaries need not be disputed. But its application to particular cases must be controlled and modified by other rules equally as well established. Assuming, as the charge requested does, that the evidence was sufficient to justify a finding that, when Bellamy purchased from Ingraham, Pogue surveyed and established as the west boundary a line east of the true west boundary line of the Neil survey, and that Bellamy understood and accepted that as his line, there are other facts in this case to be considered which make improper the rendition of a judgment in favor of the appellants based upon such finding. It will be observed that in both deeds—that from Ingraham to Bellamy and from Bellamy to Mills—the west boundary line of the Neil survey is called for, and is the first call mentioned, as the west boundary line of the land conveyed. Neither of those deeds calls for any objects, natural or artificial, which conflict with the true Neil line as originally established. We then have field notes in which there is neither a patent or a latent ambiguity as to that boundary. If we rely upon the language which the parties incorporated in the written conveyances introduced in evidence, and which are not attacked as incorrect, Bellamy and Mills both purchased to the true Neil west boundary line. The rule is well settled that in such cases the written description controls. In the case of Johnson v. Archibald, 78 Tex. 96, 14 S. W. 266, 22 Am. St. Rep. 27, Justice Gaines used this language:

"If the calls in a grant, when applied to the land, correspond with each other, parol evidence is not admissible to vary them, by showing that in point of fact they were not the calls of the survey as actually made. But if, when so applied, they disclose a latent ambiguity—that is to say, they conflict with each other—then extrinsic evidence may be resorted to in order to determine the conflict and to show the land actually intended to be embraced by the calls of the survey."

The same proposition is announced in the following cases: Brodbent v. Carper, 100 S. W. 183; Anderson v. Stamps, 19 Tex. 465; Williams v. Winslow, 84 Tex. 371, 19 S. W. 513; Thompson v. Landon, 87 Tex. 254, 28 S. W. 931; Jamison v. N. Y. & L. T. Co., 77 S. W. 969; Watts v. Howard, 77 Tex. 71, 13 S. W. 966; Robertson v. Mosson, 26 Tex. 248. It may be that in a contest between Ingraham and Bellamy, or one claiming under Bellamy with notice, Ingraham would, upon a proper showing, have a right to restrict the purchaser to the line surveyed by Pogue. But in order to do so he would be required to allege and prove a mistake in the field notes of his deed. Whether Ingraham intended to do so or not, he executed a deed which conveyed to the true west boundary line of the Neil survey, and thereby invested his grantee with the legal title to all he described. Whatever interest remained in him by reason of a mistake in thus describing the land was an equity, of which there was no written record. One purchasing from Ingraham's grantee without notice of that equity would acquire title to all the land described in the deed. According to the testimony of Mills, he had no notice of any agreement as to any line which varied from the true Neil west boundary line. But even if he had notice, that fact is of no value in this case to the appellants. The most they can claim in that connection is that they have shown an outstanding equity in Ingraham, but without connecting themselves with it. While evidence of an outstanding legal title is sufficient to defeat the plaintiff in an action for the recovery of land, such is not the result when the outstanding title is merely an equity. It is required in those cases that the defendant connect himself with that equity. That rule was announced in Shields v. Hunt, 45 Tex. 428, and has been followed in numerous other cases. But as a matter of fact, according to the testimony of Pogue, when he made the survey for Bellamy he intended to trace the original Neil west boundary line and thought he was doing so. If that be true, and it is nowhere disputed, there was no mistake in the deed from Ingraham to Bellamy in calling for the Neil line. We therefore conclude that the court did not err in refusing to submit the issues requested.

[5] In his main charge, quoted above, the court instructed the jury that the true Neil west boundary line was the dividing line between the appellee and the appellants. There is no objection to that charge presented in the record, and we must assume that the appellants acquiesced in it as correct. The special charges requested are in such conflict with that instruction that to have given them would have resulted in confusing the jury.

[6, 7] Appellants also assign error to the ruling of the court in refusing to permit the witness Pogue to testify that in making surveys of other tracts of land he never discovered any breaks in the line as was claimed in this line. We are of the opinion that the testimony was, under the circumstances, immaterial; but the objection cannot be sustained, for the further reason that the bill of exceptions fails to disclose the basis of the objection. A bill of exceptions taken to the admission or exclusion of testimony should state the grounds of the objection. G. H. & S. A. Ry. Co. v. Gage, 63 Tex. 568, 575. The same rule has been announced in numerous other cases.

The remaining assignments of error have been examined and are overruled.

The judgment will be affirmed.