BLAKE et al. v. PURE OIL CO. et al.
No. 11597.

Court of Civil Appeals of Texas. Dallas.
Jan. 6, 1934.

Rehearing Denied Feb. 24, 1934.

Thompson, Knight, Baker & Harris, of Dallas, and Crawford & Fletcher, of Grand Saline, for appellants.

W. E. West, of Canton, Wynne & Wynne, of Wills Point, and Vinson, Elkins, Sweeton & Weems and David T. Searls, all of Houston, for appellees.

JONES, Chief Justice.

Appellants, who are the heirs of James F. and Clara C. Starr, deceased, instituted this suit in the district court of Van Zandt county, in the form of trespass to try title approximately to one acre of land in the Mund Gross survey, against the Pure Oil Company, claiming to own a gas and mineral lease on said land, and against the Clark heirs, claiming to own the fee. The petition also contains a count to remove cloud from the title to the land. The case was tried to a jury, but, at the conclusion of appellants' testimony, the court gave peremptory instruction in favor of appellees, and judgment was entered in response to such instructed verdict. The following are the necessary facts:

The Mund Gross survey consists of 510 acres of land, and that portion of such survey necessary to be considered on this appeal is bounded on the east by the John Walling league and the A. H. Wylie survey, on the west by the H. V. Moore survey, on the south by the James Rose survey, and on the southwest by the Juan Prado survey. All of these bordering surveys are senior to the Mund Gross survey. The field notes of the Mund Gross survey make the west line of the John Walling league the east line of the Mund Gross, except that said eastern line extends south a short distance from the termination of the west line of the Walling survey, with the west line of the A. H. Wylie survey, where such line terminates in the northeast line of the Juan Prado survey, making the most southern point of the Mund Gross survey; the eastern line of the H. V. Moore survey forms the western line of the Mund Gross survey on that portion of such survey about which this appeal is concerned. Such field notes also establish the most westerly southwest corner of the Mund Gross survey at a point which is the southeast corner of the H. V. Moore survey. Running east from the southeast corner of the H. V. Moore survey, the field notes call for a point on what is known as the Cherokee line. This southern line, running east from the southeast corner of the Moore survey to an intersection with the Cherokee line, forms at such point the north corner of the Juan Prado survey. From this corner the survey runs southeast with said Cherokee line to the southwest corner of the A. H. Wylie survey, which is also the southeast corner of the Mund Gross survey. The map platted from these field notes shows that the south line of the Mund Gross survey, running east from the southeast corner of the Moore survey, intersects the Cherokee line some distance south of the northern corner of such survey, and at said corner, as called for in the field notes of the Mund Gross survey. There are in existence none of the natural objects called for in the field notes at the location of the southeast corner of the Moore survey. The surveyor, however, testified that there is a post oak stump in existence, corresponding to the post oak tree in the field notes, fixing the north corner of the Juan Prado survey. This post oak stump is the only natural object in existence called

for in the field notes of this part of the Mund Gross survey.

Through mesne conveyances, James F. Starr became the owner of the entire Mund Gross survey on January 10, 1876. During his ownership, Starr subdivided the Mund Gross survey into different blocks, as per a plat on file in the general land office at Austin, made from the field notes of the subdivision surveys. This plat shows that Starr intended to include in the several blocks the entire Mund Gross survey. Blocks Nos. 5, 6, 7, and 8 are the only blocks that can be referred to in fixing the boundary lines necessary to a disposition of this appeal.

The land in controversy is in the heart of the Van oil field, is of rectangular shape, and has for its southern corner the northern corner of the Juan Prado survey. It is claimed by appellants that this land was not embraced in any of the subdivisions, and that, when these subdivisions were conveyed by James F. Starr, the title to this land passed to no purchaser of any of said subdivisions, but remained in James F. Starr; that James F. Starr died testate, and his will was duly probated in March, 1902; that Mrs. Clara C. Starr, wife of James F. Starr, was the sole beneficiary in the will, and by the probate of such will she took title to all of deceased's property, including the unconveyed portion of the Mund Gross survey. On July 9, 1925, Mrs. Clara C. Starr died testate, her will was duly probated, and all of her property was devised and bequeathed to the children of her marriage to James F. Starr. These children, or their heirs, are the appellants in this case, and, if James F. Starr died seized with the title to the land in controversy, then appellants hold the record title to said land.

Appellees claim that the land in controversy lies in block No. 7, and that James F. Starr, on September 17, 1880, conveyed by deed, block No. 7, to George W. Swindall, that the land in controversy was included in this conveyance, and that Starr thereby divested himself of title to such land. Appellees also claim that this conveyance to Swindall affirmatively shows title to the land in a third party, and thereby defeats appellants' suit in trespass to try title. The question at issue on this appeal therefore is, Does the record show, as a matter of law, that title to the land in controversy was not conveyed by James F. Starr, appellants' ancestor and under whom they claim?

James F. Starr's immediate vendee in title to block No. 7 is George W. Swindall, and the deed of conveyance describes the land as follows:

"Fifty-nine acres of land being known as block 7 of the Mund Gross 510%0 acres of Grant of land in said Van Zandt County in said State of Texas, the said conveyed 59 acres is bounded thus:

"Beginning at the most western southwest corner of said Mund Gross Grant in Brush Prairie said beginning corner being also the southeast corner of the H. V. Moore survey,

"Thence east 873 varas to corner on the east line of said Mund Gross Grant from which a post oak bears S 22½ E 14 varas and a post oak bears S 15¾ W 16³⁄₁₀ varas,

"Thence north with said line of grant 382 varas to corner on same from which a post oak bears N 8 W 16⁴⁄₁₀ varas and a black jack bears S 32 W 11.2 varas,

"Thence west at 431 varas pass the southeast corner of block No. 6 heretofore conveyed to said George W. Swindall, continuing on in all 873 varas to the southwest corner of said block No. 6 on the west line of said Mund Gross grant from which a black jack bears S 8 E 3²⁄₁₀ and a black jack bears S 24 E 4 varas,

"Thence south with said west line of Grant 382 varas to the beginning."

James F. Starr's immediate vendee in title to block No. 8 is E. V. Tunnell, and said block is described in the deed of conveyance as follows:

"Thirty-eight and eight-tenths acres of land, being block No. 8 of the Heirs of Mund Gross 510%0 acres grant of land in Van Zandt County, in said state, said conveyed land is bounded thus:

"Beginning at the most southern corner of said 510%0 acres from which a post oak bears N 23 E 18 varas and a red oak bears N 55 E 3⁷⁄₁₀ varas,

"Thence north with the east line of said 510%0 acres 668³⁄₁₀ varas to the southeast corner of block No. 7 from which a post oak bears S 22½ E 14 varas and a post oak bears S 15¾ W 16³⁄₁₀ varas,

"Thence west with the south line of said block No. 7 567³⁄₁₀ varas to corner of said 510%0 acres,

"Thence south with a boundary line of said 510%0 acres 92 varas to a corner of said 510%0 acres, from which a post oak bears S 46 E 115 varas and a post oak bears S 61½ E 104⁶⁄₁₀ varas,

"Thence S 45 E with a boundary line of said 510%0 acres 815 varas to the beginning."

It is clear that the field notes to block No. 8, as they are given in this deed of conveyance, and which is a copy of the field notes to the original survey of the various subdivision blocks of the Mund Gross survey, do not include the land in controversy, and this fact appears to be admitted by all parties to this suit.

Is the land in controversy included in the conveyance of block No. 7 to Swindall? If it is, then appellants have no title to the land in controversy, for it is shown to rest in a third party as successor in title to Swindall. The field notes to block No. 7 describe a block of land rectangular in shape, and calls for natural objects, where each of the four corners of the block is established. At the time of the most recent survey of this block, many years after the original survey was made, none of the natural objects locating any corner of this block could be located. However, the location of the south line of this block calls for its beginning point at the most westerly southwest corner of the Mund Gross survey, which is the southeast corner of the H. V. Moore survey, and for its eastern terminus at a corner in the east line of the Mund Gross survey, which is also the west line of the Walling survey. The east line has its beginning at the terminal point of said south line, and runs north with the east line of the Mund Gross survey and the west line of the Walling survey, 382 varas, where there is established the northeast corner of block No. 7, and such corner is also the southeast corner of block No. 5. The north line has its beginning at this northeast corner, and runs west to a point in the west line of the Mund Gross survey, which is the east line of the H. V. Moore survey; and the west line of this block runs south from this northwest corner with the west line of the Mund Gross survey, which is the east line of the Moore survey, to the place of beginning.

We therefore have a block of land in which the corners were originally established by natural objects, but which have long since been obliterated, and hence such calls are of no service in establishing the true corners and lines of said block. If block No. 7 be laid off so that its east line corresponds with the east line of the Mund Gross survey, and its west line corresponds with the admitted true west line of such survey, as called for in the field notes, having regard to the beginning point of said block as at the true southeast corner of the H. V. Moore survey, and the true most westerly southwest corner of the Mund Gross survey, and ignore the calls for distance, we would have a block of land containing approximately three times the number of acres that is called for in the deed of conveyance to Swindall, and whose lines, as to distance, are in irreconcilable conflict with the calls for distance in the deed of conveyance.

If block No. 7 be laid off according to course and distance, without regard to adjoinder calls, except on the east line of the Mund Gross survey, as contended for by appellants, we have a block of land containing approximately the acreage described in the deed of conveyance to Swindall, but a block the west line of which is 306½ varas east of the true west line of the Mund Gross survey, and the south line of which is 262 varas north of where such line would run if its beginning be at the most westerly southwest corner of the Mund Gross survey, as called for in the field notes. Such a block would not include the land in controversy.

■■ The intention of James F. Starr to include the entire Mund gross survey in the several subdivision blocks is clear and unmistakable, as shown by various calls for adjoinder with the bordering surveys. The confusion as to the location of block No. 7 arises from the fact that Starr and his surveyor were mistaken as to the true location of the east line of the H. V. Moore survey. The map showing the location of the subdivisions, as prepared by the surveyor, shows that it was believed, at the time of such survey, that the southeast corner of the Moore survey (the beginning call of block No. 7) was 262 varas north and 306½ varas east of what is admitted in this case to be its true location. If we give effect to the true location of the southeast corner of the Moore survey and to the unmistakable intention of Starr, in respect to including all of his land in these subdivision blocks, then the land in question is located in block No. 7; if we give effect to the supposed but incorrect location of the southeast corner of the Moore survey, and ignore such intention of Starr, then the land in question is not located in block No. 7, and was not conveyed to George A. Swindall, but title to same remained in Starr. It appears to be settled law in this state that effect must be given to the true location of the southeast corner of the H. V. Moore survey, and its supposed, but mistaken, location rejected. McCarty v. Pugh (Tex. Com. App.) 265 S. W. 126; Davis v. George, 104 Tex. 109, 134 S. W. 326; Keller v. Hollingsworth, 78 Tex. 653, 15 S. W. 110; Swann v. Mills (Tex. Civ. App.) 219

S. W. 850; Watts v. Howard, 77 Tex. 71, 13 S. W. 966. It also appears to be the settled law of this state that the calls for adjoinder with bordering surveys must control over the calls for distance, when there are no natural objects in existence. Camp v. Gulf Production Co. (Tex. Com. App.) 61 S.W.(2d) 773, 780; Id. (Tex. Civ. App.) 32 S.W.(2d) 881; Kirby Lbr. Co. v. Gibbs Bros. & Co. (Tex. Com. App.) 14 S.W.(2d) 1013, 1014. In the latter case, the Supreme Court, speaking through the Commission of Appeals, said: "A call for an adjoinder is like a call for a natural or artificial object, and any conflicting call for course, distance, or acreage, and the like, must yield." This announcement is sustained by the citation of a long list of authorities, which are here referred to. In Ruth v. Carter-Kelly Lbr. Co. (Tex. Civ. App.) 286 S. W. 322, 325, it is said: "A call for corners of older surveys established, on the ground when the survey which calls for them was made, will control a call for distance."

██ We therefore conclude that the southwest corner of block No. 7 is located at the true southeast corner of the H. V. Moore survey, and also that said block has for its east line the west line of the Walling league, and has for its west line the true east line of the H. V. Moore survey; hence the land in question is included in block No. 7 and conveyed by Starr to Swindall, and that the trial court, in holding that, as a matter of law, the evidence established an outstanding title to said land, did not err in giving the peremptory instruction. Appellants' plea that, as they were shown to be in possession of the land at the time they instituted this suit, they were entitled to invoke the rule of law that such possession is prima facie evidence of title, cannot prevail, because the record discloses that they held such possession merely as trespassers.

It necessarily follows that, in our opinion, the judgment of the trial court must be affirmed, and it is so ordered.

Affirmed.

## On Motion for Rehearing.

In this cause appellants have filed a motion for rehearing, in which two questions are especially stressed. While due regard was given these questions in the original opinion, we will again refer to them. Such questions are: (a) That, as block No. 7 of the Mund Gross survey was surveyed on the ground at the time of the subdivision of such survey into blocks, the footsteps of the surveyor must be followed, regardless of any mistake made by the surveyor in the location of lines of surveys that had been theretofore marked and established by actual surveys on the ground, and regardless of the intention of James F. Starr to include all of the land in the Mund Gross survey in the subdivision blocks; and (b) because that portion of the original decision, which held that calls for adjoinder in the survey of block No. 7 should control over the call for distance, is in conflict with the decision of the Supreme Court, in Turner v. Smith, 61 S.W.(2d) 792.

It is true that all of the subdivision blocks of the Mund Gross survey, made by James F. Starr, including block No. 7, were actually surveyed on the ground. It is also true that James F. Starr intended the beginning corner of block No. 7 to be the most westerly southwest corner of the Mund Gross survey, which is also the southeast corner of the Moore survey; and he likewise intended the south line of block No. 7 to be extended from this said corner to the east line of the Mund Gross survey; the latter line had been previously marked and established by actual survey. It was also the intention of Starr that the north line of block No. 7 should be extended from a point in the east line of the Mund Gross survey, established as the northeast corner of such block, to a point in the west line of said survey, which latter line coincides with the east line of the Moore survey, and had been marked and established by actual survey. These intentions of Starr are clear and unmistakable from this record. As shown in the original opinion, when Starr conveyed block No. 7, he intended to convey all of the land embraced in the description of block No. 7, the field notes of which called for its north and south lines to join, respectively, to the east line of the Mund Gross survey on the one side, and the west line of such survey on the other. The calls for distance of these lines, contained in the field notes of block No. 7, do not coincide with the actual distance between the east and west lines of the Mund Gross survey, because the surveyor was mistaken as to the location of the most westerly southwest corner of the Mund Gross survey, and mistaken as to the location of the established west line of such survey.

We held that the calls for distance were inferior to the calls for adjoinder to long existing and established lines, and also that such holding was the only one that would conform to the intention of Starr; that, because of such mistake of the surveyor, as to

the location of the western boundary line of the Mund Gross survey and the consequential mistake of the location of its most westerly southwest corner, we should not follow in the footsteps of the surveyor, adopt such mistake, and thereby do violence to the clear intention of appellants' ancestor, under whom they claim, but should follow the calls for adjoinder.

We do not believe the original opinion is in conflict with the case of Turner v. Smith, supra, which held that distance calls would prevail over a call made upon misapprehension as to the location of an unmarked line. If a line be unmarked, its location has not been established by a survey. In the instant case, the lines called for had been established and marked by an actual survey, and this is the distinction between these two cases. We are therefore of the opinion that the motion for rehearing should be overruled.

Overruled.