### WILLIAM JOHNSON v. G. A. ARCHIBALD ET AL.

#### No. 6608.

1. **Conflicting Calls—Course and Distance in Survey.**—If the calls in a grant
when applied to the land correspond with each other, parol evidence is not admissible
to vary them by showing that in point of fact they are not the calls of the survey as
originally made. But if when so applied they disclose a latent ambiguity—that is to-
say, if they conflict with each other—then extrinsic evidence may be resorted to in
order to determine the conflict and show the land actually intended to be embraced by
the calls of the survey.

2. **Actual Survey.**—The survey actually made is in legal contemplation the true
survey, and it is always competent to show by any legal evidence where in fact the
lines were run upon the ground.

3. **Mistake in Call for Object.**—Whenever the evidence is sufficient to induce-
the belief that a call for a natural or an artificial object is a mistake, and that there is
no mistake in the call for course and distance, the latter will prevail and the former
be disregarded.

4. **Presumptions Supporting Judgment.**—In absence of findings of fact in the
record, if the evidence in the statement of facts be sufficient to sustain the judgment
upon any hypothesis it will be presumed that the judgment was rendered upon it.

APPEAL from Clay. Tried below before Hon. L. A. Crane, Special Dis-
trict Judge.

From the following maps the opinion can be understood. The first is
one made by a surveyor who testified as witness and had surveyed the
Crane and surrounding surveys.

The second map includes the subdivisions sold, and also the Roberts
surveys made south of the supposed south line of the Crane.

The contention is whether the Crane is limited by the call for course
and distance from the Carabajal south line, or whether it extends to the
Orange County school land survey. There was conflicting testimony,
there being testimony to the running of the west line from the Carabajal
south line the distance called for for the southwest Crane corner. There
was also conflicting testimony that the Crane survey was on its east line
actually run from the northeast corner of the Orange County school land
tract north to the Buffalo Bayou, Brazos & Colorado Railway survey,
though not measured.

The opinion contains detailed facts from which it will be understood
by aid of the maps.

*Barrett & Stine,* for appellant. — 1.  A call in a survey for the line or corner of another survey which is an open corner or line on the prairie at the point called for or point of intersection, will not yield to a conflicting call for distance when the location of the open line or corner is certainly determined by natural objects, marked lines, and fixed corners of abutting surveys; as where the open corner or line is but the prolongation of a line or corner called for in the adjoining survey, and which line terminating in a corner of such adjoining survey starts from a corner consisting of a natural object and is a marked line on the proper course before it terminates in an open corner on the prairie.

2.  The court erred in not finding as a matter of fact that the said Ambrose Crane survey began at the northeast corner of said Orange County school land, because the evidence showed that the east boundary line of the said Orange County school land was but an extension of the east boundary line of the Grayson County school land, both of which lines were established by marked trees and were easily determined from other marked trees on said survey and called for in the field notes thereof.  58 Texas, 245; 16 Texas, 95; 62 Texas, 660; 26 Texas, 512; 51 Texas, 331.

*A. K. Swan,* for appellees. — 1.  The corner of a survey called for in field notes as a beginning is of no higher dignity than any other corner, and if it be not well defined and established and another is, the other should be taken and from it the survey established, and especially so if by so doing the footsteps of the surveyor can thereby be the better traced.  Ayers v. Harris, 64 Texas, 296.

2.  If calls in a survey are contradictory or conflicting preference must be given to those which in their application to the grant are most certain and definite, and especially when they are most in accord with the original plan of the survey as to shape and quantity.  Phillips v. Ayres, 45 Texas, 601; Boon v. Hunter, 62 Texas, 582; Jones v. Andrews, 62 Texas, 652; Davidson v. Killen, 68 Texas, 406.

GAINES, ASSOCIATE JUSTICE.—This suit involves the true location of the boundary lines of the Ambrose Crane survey of land in Clay County, which, according to the calls in the patent, purports to contain 2141⅓ acres.  In December, 1874, the plaintiff below, who is appellant here, was the owner of 640 acres of the survey.  So much of the tract is not involved in this suit; but at that time the remainder of the tract was claimed by four persons, each claiming an undivided interest as follows:  B. T. Duval, 420 acres; Fort and Jackson, jointly, 751 acres; and William Jamison, 331 acres.  Jamison was also entitled to any excess in the land that might exist over 1502 acres.  Accordingly, on the 7th of December, 1874, these tenants in common had agreed upon a partition, and thereupon Duval, Fort, and Jackson conveyed to Jamison 100 acres of the land which

was described by metes and bounds, and in consideration thereof Jamison conveyed to them all his interest in the tract held by them all in common, except in the 100 acres conveyed by them to him. The 100 acres received by Jamison in the partition lies near the town of Henrietta, and was presumably of more value per acre than the remainder of the tract. At the time of the execution of the partition deeds mentioned above Duval, Fort, and Jackson executed to Jamison a contract in writing by which they bound themselves on or before the 1st day of September, 1875, to have the land conveyed to them surveyed, and if found to contain more than 1402 acres to select that quantity and to convey what remained to Jamison. This was never done. Subsequent to that contract Jamison conveyed by quitclaim deed all his interest in the land to the plaintiff. F. W. Randall having through a chain of mesne conveyances become the owner of the interest of Fort, Duval, and Jackson, conveyed by metes and bounds separate parcels of the tract ·to certain of the defendants in the following order: To defendant Malone, 288⅘ acres; to defendant Worsham, 836½ acres; to A. C. Jacobs, 183⅘ acres; and to Mary Newcomb, 248½ acres. Defendant Conn claims the tract conveyed to Jacobs as substitute assignee under a deed of assignment made by Jacobs for the benefit of his creditors.

If there is no excess in the acreage of the survey as called for in the patent, Jamison's conveyance to Fort, Duval, and Jackson passed all his title legal and equitable in the survey, and the plaintiff took nothing by the subsequent conveyance from him. The plaintiff, however, contends that there is an excess in the survey of about 680 acres, and brings this suit to recover it.

The patent to the A. Crane calls to begin at the northeast corner of the Orange County school land; thence west 2495 varas southeast corner of Barret survey; thence north 3648 varas northeast corner same; thence east 1344 varas southeast corner of Carabajal; thence south 556 varas southwest corner Buffalo Bayou, Brazos & Colorado Railroad survey; thence east 1900 varas a stone from which a mesquite marked X bears north 12 east 17 varas a cottonwood 12 inches in diameter marked X bears south 280 varas; thence south 270 varas Dry Fork of Wichita at 4844 varas corner; thence west 749 varas a corner in east boundary line of Orange County school land; thence north 1752 varas to beginning.

The plaintiff alleged in his petition that there were mistakes in the field notes in the following particulars, viz.: The call for the second line north 3648 varas should have been north 4920; the call east 1344 varas should have been east 1472; the last call but one should be west 898 instead of 749 varas. He claims that the survey extends 1742 varas further north and south and 151 varas further east and west than appears by the distances called for in the field notes of the patent. The testimony of the surveyors shows that there is a mistake in the patent. It appears by

a survey of the land that the distance between the north boundary line of the Orange County school land and the south boundary of the Carabajal is in fact 4920 varas, while the distance called for in the patent would make it only 3648. It is evident therefore that there is a mistake in the call for the length of the west boundary line or in the call for the lines and corner of some one of the surrounding surveys. The contention of the plaintiff is that the error is in the call for distance, while the defendants insist that the mistake is in the calls for the corner and lines of the Orange County school land survey.

The northeast corner of the last named survey is in the prairie, with no objects natural or artificial to mark it. Its locality can only be fixed by surveying from the corner of the Grayson County school land survey, which lies 10,000 varas south of it. Its north boundary line is also unmarked. On the other hand, the lines of the Carabajal and the Buffalo Bayou, Brazos & Colorado Railway Company surveys are readily ascertained by corners well marked on the ground.

A witness for defendant testified that one Green, who made the original survey, and who at the time of the trial was dead, told him while running the lines of the tract that when he surveyed the land originally "he located the whole north line of the Crane survey on the ground by the marks and corners called for in the field notes; that he run the west line the length called for, and called for the Orange County school land because he supposed he had reached it; that when he had reached the southwest corner of the Crane survey by course and distance he then went across the prairie to the cottonwood corner and began again and ran the east boundary line by course and distance called for in the field notes, thence west and north as called for, and then stopped." If such was the manner in which the survey was made, and if the calls for the corner and lines of the Orange County school lands are to be disregarded, then the land between the survey so established and the latter survey was left vacant. Nearly the whole of this strip is held by defendant Roberts under subsequent locations.

But, on the other hand, a witness for plaintiff testified that Green told him "that the only running that he ever did on the ground was from the Dry Fork and the cottonwood bearing near the extreme northeast corner, and this corner he made and chained to these bearings; that he had before run the surveys on the north; that he began the survey on the northeast corner of the survey in the name of Orange County, and he established this corner by running from the southeast corner of the Grayson County, the nearest well established corner, and going north the distance called for when he began the Crane. That he did this surveying on his horse with his compass and no chain, but counted the steps of his horse as he knew the distance he stepped. Witness asked him if he did not know there was a large excess in the Ambrose Crane. He said he only guessed

at the length of the lines; that it made no difference; that land was not. worth more than 15 cents an acre and nobody noticed it or cared about it."

If the calls in a grant when applied to the land correspond with each other parol evidence is not admissible to vary them by showing that in point of fact they are not the calls of the survey as actually made. But if when so applied they disclose a latent ambiguity—that is to say, if they conflict with each other—then extrinsic evidence may be resorted to in order to determine the conflict and to show the land actually intended to be embraced by the calls of the survey. Certain calls, such as for natural objects, marked lines and corners, being less likely the result of mistake, in the absence of other evidence, prevail over calls for course and distance; but the survey actually made is in legal contemplation the true survey, and it is always competent to show by any legal evidence where the lines were in fact run upon the ground. ' It follows, therefore, that whenever the evidence is sufficient to induce the belief that the mistake is in the call for natural or artificial objects and not in the call for course or distance the latter will prevail and the former will be disregarded.

In Gerald v. Freeman, 68 Texas, 201, this court held that a call for course and distance should not be subordinated to a call for an unmarked line in a prairie which could not itself be ascertained except by running the boundaries of another survey according to course and distance. In that case, as in this, the declarations of the surveyor were adduced in evidence, and were to the effect that he ran the course and distance called for in the field notes, and called for the line of a neighboring survey, supposing he had reached it when he had not. The difference between that case and this is that here there is a conflict of evidence upon the point and in that there was none. But it was the duty of the court below to determine the conflict, and the finding has evidently been in favor of the theory that the land in controversy was surveyed from the north, and that the lines were actually run upon the ground by the course and the distance called for in the field notes of the survey. The defendant Roberts did not plead the statute of limitations, and without such finding the judgment must have gone against him, although the other defendants. may have prevailed in the suit.

At all events, there being no conclusions of fact and law found in the record, if the evidence is sufficient to support the judgment upon any defense presented in the case, it is to be presumed that the court found in favor of the defendants upon that issue. Upon the question of excess in the survey the evidence was sharply in conflict, but we must presume that the court has determined the conflict in favor of the defendants, and the evidence being sufficient to sustain the finding the judgment must stand.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered June 27, 1890.