RUTH STARR BLAKE ET AL. V. THE PURE
OIL COMPANY ET AL.

No. 6750. Decided January 20, 1937.
(100 S. W, 2d Series, 1009.)

*Crawford & Fletcher, Thompson, Knight, Baker & Harris,* all of Dallas, for plaintiffs in error.

It was error for the Court of Civil Appeals to hold that the call for course and distance must yield to the call for the east line and the southeast corner of the Moore Survey, where the surrounding circumstances and positive evidence show that such calls were the mistaken calls, and the calls for course and distance were the true calls. It was also error for the Court of Civil Appeals to hold that in constructing Block Seven the southwest corner of Block Seven should be placed so as to coincide with the true location of the southeast corner of the

Moore Survey, instead of the mistaken location where the ancestor of the plaintiffs and the surveyor thought the southeast corner of the Moore Survey was located, and where they actually marked on the ground the southwest corner of Block Seven. Booth v. Upshur, 26 Texas, 64; State v. Sulflow, 128 S. W., 653; Wilson v. Giraud, 111 Texas, 253, 231 S. W., 1074; Turner v. Smith, 122 Texas, 338, 61 S. W. (2d) 792.

*W. E. West,* of Canton, *Wynne & Wynne,* of Wills Point, *C. A. Sweeton, David T. Searls, Vinson, Elkins, Sweeton & Weems,* of Houston, for defendants in error.

Where the description of Block Seven calls for the most western southwest corner of the Mund Gross Survey, the southeast corner of the Moore Survey and the west line of the Mund Gross Survey and there are no identified objects, natural or artificial, which conflict with the location of this block in accordance with these calls, such calls for adjoiner should be followed. Camp v. Gulf Production Co., 122 Texas, 383, 61 S. W. (2d) 780; Kirby Lumber Co. v. Gibbs Bros., 14 S. W. (2d) 1013; McCarty v. Pugh, 265 S. W., 126; Davis v. Baylor (Texas Sup.), 19 S. W., 523.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The suit is to try the title to a tract of land containing about one acre in the Mund Gross survey in Van Zandt County. The entire survey, which is described in its patent as containing 510.6 acres, was owned by James F. Starr. In the year 1876 he caused it to be subdivided into blocks, which were numbered from one to eight, inclusive, and thereafter, on July 9, 1876, and September 17, 1880, he sold and conveyed blocks six and seven to George W. Swindall, and on November 10, 1897, he sold and conveyed block eight to E. V. Tunnell. It is the contention of plaintiffs in error, who are the devisees or the heirs of the devisees, of James F. Starr and his wife, that the tract of land in controversy is not included within the bounds of any of the eight subdivisions of the survey made by Starr, and that Starr owned the tract at the time of his death. Defendants in error take the position that the evidence shows the land in controversy to be within block seven, and that Starr's conveyance of that block to Swindall is proof of an outstanding title which defeats plaintiffs in error's suit. After plaintiffs in error had offered their evidence and rested the trial court peremptorily instructed the jury in favor of defendants in error. The judgment of the trial court that plaintiffs in error take

nothing was affirmed by the Court of Civil Appeals. 68 S. W. (2d) 244.

The Mund Gross grant was surveyed May 22, 1876. It is junior to the several surveys surrounding it, which are the John Goodman survey and the Nacogdoches County School Land survey on the north, the Nacogdoches County School Land survey and the H. V. Moore survey on the west, the H. V. Moore and the J. Rose surveys on the south, the Juan Prado survey on the southwest, and the W. H. Wiley and J. Walling surveys on the east. The field notes of the Mund Gross survey call for lines and corners of its adjoining surveys and describe bearing trees at many of its corners. Where they call for the northwest and northeast corners of the Moore survey they describe the bearing trees that are described in the field notes of the Moore survey as marking those corners. Both the field notes of the Moore survey and those of the Mund Gross survey describe the southeast corner of the Moore survey as being in a brush prairie with no timber for bearings. The extreme south corner of the Mund Gross survey is described in its field notes as being on the Cherokee line and coinciding with the southwest corner of the Wiley survey and marked by two bearing trees. Wathen, the surveyor who testified for plaintiffs in error, could find on the ground no evidence of any of the bearing trees at the corners of the Mund Gross survey as described in its field notes, except that he found at its more northern southwest corner a large post oak stump which he was convinced was the post oak bearing tree described in the field notes of the Moore survey and in the field notes of the Mund Gross survey as marking the northwest corner of the Moore survey. There seems to be no controversy as to the true locations on the ground of the east and south lines of the Nacogdoches County School Land survey, the northeast line of the Prado survey, which coincides with a part of the Cherokee line, and the west lines of the Wiley and Walling surveys. Wathen fixed the true location of the Moore survey as being 262 varas south and 306.5 varas west of the location of the survey as it has been fenced and possessed by those claiming to own it. This more southern and western position is treated by the Court of Civil Appeals in its opinion as the admitted true location of the survey, and defendants in error, while not expressly admitting the correctness of the surveyor's construction, concede for the purpose of the appeal that the location of the Moore survey as fixed by him is correct.

James F. Starr, the owner of the Mund Gross survey, on

July 4 to 8, 1876, undertook to subdivide the survey into blocks by making a survey on the ground. He seems to have been a practical surveyor, and while a surveyor named Jennings handled the compass, he himself took the notes, superintended the work generally, and prepared an elaborate map showing the lines and corners of the Mund Gross survey and of many of the adjoining surveys, the lines and corners of the subdivisions, and in considerable detail the work done on the ground. George W. Swindall testified that he assisted in making the survey and bought from Starr two of the subdivisions, blocks six and seven. Starr's conveyance of block six to Swindall, dated July 9, 1876, describes the block by metes and bounds, giving bearing trees at each of its four corners, and showing the block to contain 63.3 acres, with its north line running with the south line of the Nacogdoches County School Land survey and its west line running with the east line of the H. V. Moore survey. The deed, dated September 17, 1880, by which Starr conveyed block seven to Swindall, describes the block as containing 59 acres and bounded as follows:

"Beginning at the most western southwest corner of said Mund Gross Grant in Brush Prairie said beginning corner being also the southeast corner of the H. V. Moore Survey

"Thence East 873 varas to corner on the east line of said Mund Gross Grant from which a post oak bears S 22½ E 14 varas and a post oak bears S 15 ¾ W. 16 3/10 varas

"Thence North with said east line of Grant 382 varas to corner on same from which a post oak bears N 8 W 16 4/10 vrs and a black jack bears S. 32 W 11.2 varas

"Thence West at 431 varas pass the southeast corner of Block No. 6 heretofore conveyed to said George W. Swindall continuing on in all 873 varas to the southwest corner of said Block No. 6 on the west line of said Mund Gross Grant from which a Black Jack bears S. 8 E. 3 2/10 and a black jack bears S 24 E 4 varas

"Thence South with said west line of Grant 382 varas to the beginning."

Block eight, conveyed by Starr to E. V. Tunnell on November 10, 1897, is described in the deed as containing 38.8 acres and bounded as follows:

"Beginning at the most southern corner of said 510 6/10 acres from which a post oak bears N. 23 E 18 varas and a red oak bears N 55 E 3 7/10 varas;

"Thence North with the east line of said 510 6/10 acres 668 3/10 varas to the southeast corner of Block Number 7

from which a post oak bears S 22½ E 14 varas and a post oak bears S 15 ¾ W 16 3/10 varas;

·"Thence West with the south line of said Block No. 7 567 ·3/10 varas to corner of said 510 6/10 acres;

"Thence south with a boundary line of said 510 6/10 acres 92 varas to a corner of said 510 6/10 acres, from which a post oak bears S 46 E 115 varas and a post oak bears S 61½ E 104 6/10 varas;

"Thence S. 45 E with a boundary line of said 510 6/10 acres 815 varas to the beginning."

The lengths and courses of the lines, the bearing trees and the acreage of blocks six, seven and eight, as described in the deeds, are the same as those shown on the map prepared by Starr. The surveyor Wathen testified that he identified the southwest corner and the south corner of block eight by evidence of their original bearing trees and from other facts developed by his work on the ground. Except for the remains of bearing trees at these two corners of block eight, the bearing trees at the corners of blocks six, seven and eight have disappeared.

As stated in the opinion of the Court of Civil Appeals, the important question in the case is whether the land in controversy is included in the conveyance of block seven to Swindall. That court found from the evidence that, if block seven be laid off so that its east line corresponds with the east line of the Mund Gross survey and its west line corresponds with "the admitted true west line of such survey" (the west line as fixed by the testimony of Wathen), with its southwest or beginning corner at the "true" southeast corner of the Moore survey, the block of land contains three times the number of acres called for in the deed and the lines of the block are, as to distance, in irreconcilable conflict with the calls for distance. By such construction the land in controversy is included within block seven. The Court of Civil Appeals also found from the evidence that at the time Swindall subdivided the Mund Gross survey into blocks he and the surveyor who assisted him were mistaken as to the true location of the Moore survey, believing that its southeast corner, the beginning call of block seven, was 262 varas north and 306½ varas east of "the admitted true location of the southeast corner of the Moore survey." That court further found that if block seven is laid off by course and distance, beginning at the point at which Starr and his surveyor believed the southeast corner of the Moore survey to be located and extended thence east to the east line of the Mund Gross

survey, the block has approximately the acreage described in the deed and that the block so constructed does not include the land in controversy.

Notwithstanding the foregoing findings of fact, which are supported by the evidence, the Court of Civil Appeals held that block seven should be constructed by placing its southwest corner at the southeast corner of the Moore survey as fixed by the testimony of Wathen rather than at the point where Starr and his surveyor believed the southeast corner of the Moore survey to be located. The reasons given by the Court of Civil Appeals for its decision are: that effect must be given to the true location of the southeast corner of the Moore survey and its supposed, but mistaken, location rejected; that the calls for adjoiner to the east line and the southeast corner of the Moore survey must control over calls for distance, there being no natural objects found; and that, although all of the sub-divisions of the Mund Gross survey, including block seven, were actually surveyed on the ground, the footsteps of the surveyor should not be followed, because to do so would be to adopt the surveyor's mistake and would do violence to Starr's intention to include all of the Mund Gross survey in the sub-divisions and to extend the north and south lines of block seven to reach both the east and the west lines of the Mund Gross survey.

It is our opinion that the Court of Civil Appeals erred in disregarding the mistaken belief of Starr and his surveyor as to the location of the east line and the southeast corner of the Moore survey and in giving controlling effect to the calls for the east line and the southeast corner of the Moore survey as calls for the line and corner in their true locations; and that it erred in disregarding the footsteps of the surveyor.

■ A call for adjoiner is ordinarily given controlling effect over a call for course and distance, but when it is proven that the call for the adjoiner was made by conjecture or under a mistaken belief as to the location of the adjoiner, such call does not control over course and distance. In such situation the call for adjoiner will be rejected as inserted by mistake and controlling effect given to course and distance from known or undisputed corners, when under the facts of the particular case such construction of the survey is "most consistent with the intention to be derived from the entire description." See: Wilson v. Giraud, 111 Texas, 253, 264, 231 S. W., 1074, 1078; Porter v. State (Texas Civ. App.), 15 S. W. (2d) 191, 193; Finberg v. Gilbert, 104 Texas, 539, 547, 141 S. W., 82; Gerald

v. Freeman, 68 Texas, 201, 204, 4 S. W., 256; State v. Sullivan (Com. App.), 92 S. W. (2d) 228; State v. Talkington (Tex. Civ. App.), 274 S. W., 314; Cox v. Finks (Texas Civ. App.), 41 S. W., 95, 99; Gilbert v. Finberg (Texas Civ. App.), 156 S. W., 507; Lafferty v. Stevenson (Texas Civ. App.), 135 S. W., 216, 220; Lomax v. Rowe (Texas Civ. App.), 3 S. W. (2d) 498; Burton v. McGuire (Com. App.), 41 S. W. (2d) 238.

As has been stated, the Court of Civil Appeals found that Starr, who conveyed block seven to Swindall, and the surveyor who assisted Starr in making the survey of block seven and the other subdivisions, were mistaken as to the location of the H. V. Moore survey, believing its southeast corner (and consequently the southwest corner of the Mund Gross survey) to be 262 varas north and 302½ east of its true location. The map prepared by Starr and other facts in evidence support this finding. It having been established that the call in the field notes of block seven for the southeast corner of the Moore survey was made by mistake, it is our opinion that such mistaken call should be rejected and the block constructed by course and distance from the southeast corner of the Moore survey, located in the position where Starr and his surveyor believed it to be (which is the same or substantially the same as the position of the Moore survey as fenced and possessed), because under the facts in evidence such construction is most consistent with the intention to be derived from the entire description and harmonizes the other terms of the field notes. This construction is the same in effect as a construction of block seven by course and distance from its southeast corner on the undisputed west line of the Walling survey, the location of which southeast corner is proven by evidence hereinafter discussed. When block seven is thus constructed the lengths and courses of its lines are the same as those given in the field notes and shown on Starr's map, it has the acreage called for in the deed and marked on the map, and it does not conflict with block five, block six or block eight, or with the Juan Prado survey. On the other hand, if block seven is constructed from or extended to the southeast corner of the Moore survey as located by Wathen, all of the lines of the block are given grossly excessive lengths and its acreage increased to approximately three times that called for in the deed and shown on the map, and block seven as thus constructed conflicts substantially with the Juan Prado survey and conflicts with block eight to such extent that block eight contains only fourteen instead of thirty-eight acres.

The evidence fixes the location of the north corner of the Juan Prado survey as being approximately 190 varas farther north than the south line of block seven if block seven is constructed from the southeast corner of the Moore survey as fixed by Wathen; and the north line of block eight is shown by the evidence to be 92 varas farther north than the north corner of the Prado survey. A construction of block seven in such way as to conflict with block eight is an impossible construction. The two blocks were surveyed on the ground at the same time by Starr and the surveyor who assisted him. Starr's map shows that the northeast corner of block eight is the southeast corner of block seven and that the north line of block eight is the south line of block seven. The field notes of block eight describe its east line as running north to the southeast corner of block seven and its north line as running west with the south line of block seven; and the field notes of the two blocks describe the same bearing trees at their common corner.

■ We have reached the foregoing conclusion, that the mistaken call for the southeast corner of the Moore survey should be rejected, without considering the facts in evidence tending to prove how block seven was actually surveyed on the ground. Those facts, however, are in our opinion admissible and support the conclusion. When the description in field notes or in a deed is both on its face and in its application to the ground clear and unambiguous, extrinsic or parol evidence may not be resorted to for the purpose of showing that the surveyor actually ran a line of the survey at a different place from that described in the field notes or deed. Davis v. George, 104 Texas, 106, 134 S. W., 326. But parol evidence is admissible to show where on the ground a survey or a line of a survey was actually made, when the calls in the field notes or deed are conflicting or ambiguous, or when the effort to apply the description to the ground gives rise to ambiguity. Hughes v. Sandal, 25 Texas, 162, 164; Thompson v. Langdon, 87 Texas, 254, 258, 28 S. W., 931; Johnson v. Archibald, 78 Texas, 96, 102, 14 S. W., 266, 22 Am. St. Rep., 27; Wilson v. Giraud, 111 Texas, 253, 263, 231 S. W., 1074; Gill v. Peterson, 126 Texas, 216, 86 S. W. (2d) 629. The description in the deed conveying block seven is not on its face ambiguous but, as has been shown, serious conflicts and irreconcilable ambiguities arise when effort is made to apply the description to the ground.

Wathen's testimony, in connection with the field notes of block eight and Starr's map, proves the location on the ground

of the lines of block eight as surveyed. The north corner of the Prado survey and the southwest corner of block eight are a common corner. The field notes of the Prado survey and the field notes of block eight describe the same bearing trees to mark the corners. Starr's map shows that the southwest corner of block eight is at the north corner of the Prado survey. Wathen found at this corner a post oak stump which he identified as one of the original bearing trees. He also found at the south corner of block eight the stump of a red oak tree which he testified was in his opinion one of the bearing trees for that corner as described in the field notes. These two marked corners are on the northeast line of the Prado survey, which coincides with the marked Cherokee line. While no evidence can be found of the bearing trees at the northeast corner of block eight, that corner and the north line of block eight, as surveyed on the ground, are fixed with reasonable certainty from the identified southwest corner and the identified south corner of the block. The west line of block eight, which runs north, is only 92 varas in length, and thus the northwest corner of block eight at the terminus of this west line is the short distance of 92 varas north of the identified southwest corner of the block. The northeast corner of block eight as described in the field notes is on the west line of the Walling survey and 668.3 varas north of the identified south corner of block eight. When block eight is thus constructed, its south and southwest corners are at the corners identified by Wathen as the original marked corners, its southwest line is on the undisputed and marked northeast line of the Prado survey, its east line is on the undisputed west lines of the Wiley and Walling surveys, and all of its lines have on the ground the lengths called for in the field notes, except that the southwest line is excessive in length by eight varas. These facts are sufficient to prove the location of the north line of block eight as it was surveyed on the ground by Starr and the surveyor who assisted him, and such proof of the location of the north line of block eight is proof of the location on the ground of the south line of block seven. The testimony of Swindall, who accompanied Starr in making the survey, affords further evidence that this is the location of the south line of block seven as surveyed. This method of locating the south line of block seven by the footsteps of the original surveyor gives the line the same location that it has when it is extended east from the southeast corner of the Moore survey in its northern and eastern position. The

land in controversy lies south of the south line of block seven located by either of the two methods.

Starr did intend to subdivide all of the Mund Gross survey into blocks and he did intend for block seven to extend both to the east line and to the west line of the survey. But as to the location of a survey on the ground the inquiry is where the surveyor actually placed it, not where he originally intended to place it or where he should have placed it. Blackwell v. Coleman County, 94 Texas, 216, 220, 59 S. W., 530; Forbes v. Withers, 71 Texas, 302, 306, 9 S. W., 154; Weatherly v. Jackson, 123 Texas, 213, 221, 71 S. W. (2d) 259. And the intention of the parties as to the land conveyed by a deed is to be deduced from the whole of the description contained in the deed, aided in this case (because ambiguities and conflicts arise upon the application of the descripton to the ground) by evidence of the footsteps of the surveyor. Blackwell v. Coleman County, supra; Davis v. George, 104 Texas, 106, 110, 134 S. W., 326; Gill v. Peterson, 126 Texas, 216, 222, 86 S. W. (2d) 629. Starr's deed of block seven discloses not only that he intended that the land conveyed extend both to the west and to the east line of the Mund Gross survey, but also that he intended the north and south lines of the tract conveyed each to be 873 varas long and the east and west lines of the tract each to be 382 varas long, and that he intended the tract to contain 59 acres. The evidence, including Starr's map and that as to the footsteps of the surveyor, shows that he intended to convey block seven with its beginning corner at what he believed to be the location of the southeast corner of the Moore survey. When the description in the deed is applied to the ground, it is found that the grantor has expressed in the deed conflicting intentions. One intention must be rejected and controlling effect given to another. The fact of mistake, if proven, and evidence as to the footsteps of the surveyor may serve, as we think they do here, to solve the problem.

We do not deem it necessary to discuss the question whether plaintiffs in error proved such prior possession as constitutes prima facie evidence of title, since on the trial they did not, and probably will not on another trial, rest their case on proof of possession.

The motion of the defendants for instructed verdict at the close of the plaintiffs' case admitted every material fact that the evidence tended to prove; and the rules applied here are those which are in our opinion appropriate to the material facts which the evidence in the record proves and tends to

prove. Other rules may be applicable to other or different facts proven on another trial.

The judgments of the Court of Civil Appeals and of the district court are reversed and the cause is remanded to the district court.

Opinion adopted by the Supreme Court January 20, 1937.