## TEXAS CO. et al. v. FOSHEE et al.
### No. 5537.

Court of Civil Appeals of Texas. Texarkana.

June 24, 1940.

Rehearing Denied July 11, 1940.

H. R. Wilson, of Houston, Hurst, Leak & Burke, Robert E. Mitchell, and B. Reagan McLemore, all of Longview, Gordon Simpson, of Tyler, and Wm. K. Hall, of Ft. Worth, for appellants.

Wynne & Wynne, Taylor & Storey, and Lacy, Price & Williams, all of Longview, and P. G. McElwee, of Houston, for appellees.

HALL, Justice.

This is a suit in trespass to try title brought by A. B. Foshee and others claiming under an oil and gas lease and A. H. Tubbs and wife claiming to own the fee against the Texas Company and numerous other persons for title and possession of a small tract of land, a part of the Carleton Survey in Gregg County, lying between the Longview and Tyler highway as located in 1911 and the same highway as relocated in 1930.

Appellants answered by plea in abatement, general denial, plea of not guilty, and also claimed title to said minerals under the various statutes of limitation. In addition appellants sought compensation for the value of the oil run from the well located on said land. Judgment was for appellees upon the verdict of the jury.

Appellants' eleventh proposition is: "Since the description in the Katherine Ryan lease places the south line of the land therein described in the center of the Longview-Tyler road and accurately and precisely describes the present road by calling for a straight line which fits the course of the present road, but entirely fails to describe the former road which was crooked and which did not follow even approximately the course called for, it can not be said that the description is ambiguous and subject to be explained by parol testimony, and the verdict and judgment locating the line in the center of the former road, based as they are on parol testimony varying and contradicting the field note description, are without support in the competent evidence and contrary to the undisputed, competent evidence."

The record reflects that A. H. Tubbs and Selmer J. Boles are the sole heirs at law of John S. Tubbs, deceased. On April 20, 1911, A. H. Tubbs conveyed to Selmer J. Boles his "undivided interest in the J. S. Tubbs, deceased, estate lying and situated North of the Longview and Tyler public road and East of Moody creek * * *", a part of the Carleton Survey. It is the location of the western portion of the south line of this tract of land which is in dispute here. The following

map is helpful as illustrative of the contentions of the parties hereto.

one of the appellants here. The mineral deeds from S. J. Boles to the other ap-

On October 9, 1930, S. J. Boles and wife executed an oil and gas lease to Katherine Ryan covering the tract of land lying north of the Longview and Tyler road and east of Moody Creek, said to contain 25 acres, more or. less, and being the same land conveyed to S. J. Boles in 1911 by A. H. Tubbs, and described by metes and bounds as follows: "Part of the Wm. Carleton H. R. Survey, Beginning at the bridge on Moody Creek in the center of the Longview and Tyler road in the center of the creek; Thence S 78 E with the center of the road 468 vrs. to a corner in the road, same being the S. W. corner of the J. H. Boles tract; Thence N with the J. H. Boles West line 442.8 varas to Henry York's corner; Thence S 72 W with the York pasture line 252 vrs. to a corner in the old creek bed; Thence down the creek with its meanderings the following distances: S 63 W 198 vrs. S 20 W 190.8 vrs to the place of beginning and containing in all 25 acres of land, more or less."

This oil and gas lease was on October 13, 1930, assigned to The Texas Company,

pellants also contain this identical description. Appellees contend that line BXC on the map represents the Longview and Tyler road as it existed in 1911, the date of the conveyance of the 25-acre tract to Selmer Boles by Tubbs, and that the south line of said tract of land as described in the oil lease and mineral deeds held by appellants, lies along said 1911 designation of said road. It is appellants' contention that the description set out above contained in all the mineral conveyances and lease under which they hold, has its beginning at point A, the concrete bridge over Moody Creek on the 1930 highway and runs in a straight line to point C, fixing the south boundary line of said 25-acre tract along the 1930 highway from A to C. ABX, the shaded portion of the map, constitutes the small tract of land in controversy upon which is located an oil well, marked No. 1. No claim is made by either party to any land or leasehold west of Moody Creek or south of the 1930 highway.

The court below permitted W. E. Jones, the surveyor who ran out the lines to

the 25-acre tract in September, 1930, from which he made up the field notes contained in the oil and gas lease from Boles to Katherine Ryan, and under which identical field notes all appellants now claim, to testify, over appellants' objections, that he actually began his survey of this tract of land at point B some 50 or 60 feet north of point A, the concrete bridge over Moody Creek on the 1930 highway, and followed the old 1911 highway to X where it merged with the 1930 highway, thence in an easterly direction to point C, the admitted southeast corner of the Selmer Boles 25-acre tract and the southwest corner of the J. H. Boles land. Jones' testimony placed the south line substantially along BXC and not AC. To the same effect was the testimony of S. J. Boles. There is no controversy over the location of the other lines and corners of the 25-acre Boles tract. To render the testimony of Jones and Boles admissible, the field note description in the oil and gas lease and the several mineral deeds must present (a) an ambiguity on its face, or (b) when said field notes are applied to the ground an ambiguity arises. Davis v. George, 104 Tex. 106, 134 S.W. 326; Blake v. Pure Oil Co., 128 Tex. 536, 100 S.W.2d 1009 (Commission of Appeals approved by Supreme Court). No contention is made, and none can be, by any party to this suit that the field note description contained in the lease and mineral deeds under which appellants hold is ambiguous on its face. It clearly describes and encloses a tract of land. So the only question to be determined is, when an effort is made to apply this description to the ground does an ambiguity arise? The field notes call to commence "at the bridge on Moody Creek in the center of the Longview and Tyler road at the center of creek; Thence S 78 E with the center of the road 468 vrs to a corner in the road, same being the S.W. corner of the J. H. Boles tract * * *." This call defines a straight line between *"the bridge over Moody Creek"* along the center of the Longview and Tyler road to "J. H. Boles' Southwest corner" on a slightly southeast course. W. E. Jones who surveyed the Boles tract of land and made up the field notes for the description contained in the Katherine Ryan lease, on cross-examination testified:

"Q. When you got down to that point you called your beginning point in your survey, there was a new concrete bridge just down the creek below you? A. Yes, sir.

"Q. The bridge that had formerly been where you called your corner was dismantled? A. Yes.

"Q. And yet, with a dismantled bridge out there you called to begin in the middle of the bridge, in the center of Moody Creek and ran on 78 degrees east with the center of the road, and you knew there was a road below you, the present used road, that pretty nearly fit your course and distance? A. In a way, I had my courses wrong.

"Q. You called it south 78 east, and isn't that line 77 degrees and 15 minutes east? A. That is what they say.

"Q. Don't you know? A. I expect that is right.

"Q. In fact, you know it is right? A. I think so. Mighty good surveyors say it is.

"Q. That is 45 minutes off the course you made? A. Yes, sir."

S. J. Boles testified that at the time Jones made the survey there were two bridges over Moody Creek, the 1919 wooden bridge and the 1930 concrete bridge. Thus it appears that when Jones placed his beginning corner at the bridge there was at least a question as to whether there was one or two bridges over Moody Creek in the vicinity of his beginning point. Both witnesses agree that the 1930 concrete bridge was in place, but they differ as to whether the 1919 wooden bridge was in place or whether it had been dismantled at the time the survey was made. This fact alone adds strength to the recitation by Jones in the field notes, "beginning at the bridge over Moody Creek." But granting that there were two bridges, one at A and one at B, over Moody Creek, is there an ambiguity created in the field note description of the lease and mineral deeds when said description is applied to the ground? We think not. When the field notes made out by Jones in September, 1930, are applied to the ground they will substantially fit tract AYDC, and the south line thereof, described by Jones to be a straight line, will lack only a few feet of coinciding with line AC along the 1930 Longview and Tyler road and will have its western terminus resting at the concrete bridge and not at the old wooden bridge on said abandoned highway. Moreover, that portion of the south line BX testified to by Jones as the line he

actually ran out on the ground represents a 6 degree 54 minute curve 242.5 feet in length which is described by the judgment rendered herein, "Thence Easterly S 87 Deg. 48 min. East 65 feet; Thence eastwardly with 6 deg. 54 min. curve to the right whose length is 242.5 feet, said curved line passing North two feet of the W. W. Bradley No. 1 well." (This is the oil well on the land in controversy.) The parol testimony of Jones and Boles which was by the court below admitted in evidence as tending to establish this curved line with its beginning point at B, in our opinion, tended to create an ambiguity rather than to clarify an existing one. It must also be remembered that Jones in this field note description called to begin at *"the bridge,"* not at a bridge, and although there may have been two bridges over Moody Creek at the time he made up the field notes, when the calls in his description for the south line of said 25-acre tract are placed upon the ground, they are in substantial compliance with the 1930 concrete bridge to the west over Moody Creek, with the creek itself, the 1930 Longview and Tyler highway, and the undisputed southwest corner of the J. H. Boles land, all of which objects define a straight line running practically "S 78 E" as called for by Jones in said description. This testimony was therefore inadmissible for the reason that it contradicted, modified and changed the unambiguous written description contained in each of the instruments under which appellants hold. In the early case of Anderson v. Stamps, 19 Tex. 460, our Supreme Court stated the rule with respect to admission of parol evidence with relation to the field note description in a deed thus: "The lines of the survey, as actually marked upon the ground, if they can be found and traced, will control course and distance. But that is where the actual survey can be found and identified as the same called for in the grant. *It is not meant that where the grant calls for certain known and established natural or artificial muniments and boundaries, these may be controlled by parol proof of a survey entirely inconsistent, and repugnant to all the calls of the grant.* No case has gone to any such extravagant length as that. That would be virtually to destroy the written evidence of title, and substitute parol evidence in its stead."

This rule is also stated by Judge Gaines in Johnson v. Archibald, 78 Tex. 96, 14 S.W. 266, 267, 22 Am.St.Rep. 27, as follows:

*"If the calls in a grant when applied to the land correspond with each other, parol evidence is not admissible to vary them, by showing that in point of fact they are not the calls of the survey as actually made. But if when so applied they disclose a latent ambiguity,—that is to say, if they conflict with each other,—then extrinsic* evidence may be resorted to in order to determine the conflict and to show the land actually intended to be embraced by the calls of the survey."

And again in Thomson v. Langdon, 87 Tex. 254, 28 S.W. 931, 935, Judge Gaines said: "* * * A writing unambiguous upon its face may become doubtful when applied to the subject-matter of the description. On the other hand, *if there be no conflict in the calls found in the field notes of a survey, there is no room for construction, and the calls must speak for themselves. To permit the introduction of parol evidence to vary the calls would be to violate the familiar rule that extraneous evidence is not permissible to vary a written instrument. * * * But we apprehend that it is not proper to resort to the calls in the field notes of another survey, although made at the same time and by the same surveyor, to create a conflict in case none arises from the calls of the survey in question when applied to the objects called for as actually found on the ground."*

Perhaps the latest and clearest statement of this rule is found in Blake v. Pure Oil Co., supra [128 Tex. 536, 100 S.W.2d 1013], as expressed in the following quotation: "When the description in field notes or in a deed is both on its face and *in its application to the ground* clear and unambiguous, extrinsic or parol evidence may not be resorted to for the purpose of showing that the surveyor actually ran a line of the survey at a different place from that described in the field notes or deed. Davis v. George, 104 Tex. 106, 134 S.W. 326." (All italics ours.)

This proposition is therefore sustained. Our holding herein is not in conflict with the rule announced by the Supreme Court in State v. Sullivan, 127 Tex. 525, 92 S.W. 2d 228; Blake v. Pure Oil Co., supra, and Gill v. Peterson, 126 Tex. 216, 86 S.W.2d 629, but is wholly in accord therewith.

The conclusion reached above renders unnecessary a discussion of the other propositions brought forward.

The judgment of the lower court is reversed and here rendered for appellant The

Texas Company for the seven-eighths lease-hold interest in and to the land described in appellees' third amended original petition, and for the other appellants for their respective mineral interests in the one-eighth royalty in said tract of land. Judgment is also rendered for The Texas Company for seven-eighths of the value of the oil run from the well on said tract of land, and for the other appellants for their fractional interests in the value of the one-eighth of the oil run from said well.

Reversed and rendered.