**O. J. GILSON, Trustee et al., Appellants,**

**v.**

**UNIVERSAL REALTY CO. et al., Appellees.**

**No. 14064.**

Court of Civil Appeals of Texas.

Houston.

March 12, 1964.

Rehearing Denied April 9, 1964.

Second Rehearing Denied April 30, 1964.

116

Price, Guinn, Veltmann & Skelton, Houston, for appellants O. J. Gilson, trustee, and others, and Barnet B. Skelton, Houston, of counsel.

John E. Lewis, Harlingen, for appellants William F. Schoeneweiss and wife.

Sam W. Mintz, Houston, for appellees S. Alex Susholtz, Myron C. Kyckelhahn and E. F. Wilson.

Jesse J. Lee, Williams, Lee & Lee, Houston, for appellee Otis E. Manger.

Bonham, Stanley & Campbell, Houston, of counsel, for appellee Universal Realty Co.

Peggy Clare Satterfield, C. M. Hudspeth, and De Lange, Hudspeth & Pitman, Houston, for appellees Universal Realty Co., Leo L. Born, Jr., and Anthony C. Guerrero, and others.

Paul W. Wommack, Houston, for appellees Leo L. Born, Jr., and others.

Carl J. Rector, Houston, for appellee Phinehas D. Hoggatt.

Charles L. Laswell, Houston, for appellees Clark W. Henry and Bessie Margaret Higgins Henry.

COLEMAN, Justice.

This is a suit in trespass-to-try title involving a 61.3 acre tract of land out of the J. B. Gardiner Survey in Harris County, Texas.

In the interest of brevity the names of the numerous parties, as well as the lengthy description of the particular tract of land involved, will be omitted. The real controversy between the parties revolves around the location on the ground of the east and west lines of the J. B. Gardiner Survey.

Appellants rely on thirty points of error. The first ten are briefed together and present in various manners appellants' contention that the J. B. Gardiner Survey can be located on the ground from its own field notes, and that when so located they have title to the property in controversy by an unbroken chain of conveyances from the State of Texas. It is undisputed that the Gardiner Survey can be located by its own field notes from the west boundary line of the senior E. Barker Survey, since the field notes of the Gardiner Survey call for the S. W. Corner of the Barker as its beginning corner, and places its N. E. Corner on the N. W. Corner of the Barker.

■ It is settled that where a survey can be established on the ground from the calls in its own field notes, it must be established in that manner. Petty v. Paggi Bros. Oil Co., Tex.Com.App., 254 S.W. 565; State v. Franco-American Securities Co., Tex.Civ.App., 172 S.W.2d 731, writ ref.

Neither the S. W. Corner nor the N. W. Corner of the Barker Survey is described in the field notes of the Survey with reference to natural objects and the original markers have long since disappeared. In Strayhorn v. Jones, 157 Tex. 136, 300 S.W. 2d 623, it was held that there was a presumption that a surveyor, in constructing a survey, ran his course and distance as called for by him in his field notes, and that a survey must be so constructed unless later surveyors following the original surveyor's footsteps, show that the original surveyor's calls are a mistake and incorrect.

■ It is clear from the testimony in this case that some of the calls appearing in the field notes of the Barker Survey are incorrect. No matter which of the established corners is taken as a beginning point, conflicts arise between calls for course and distance and calls for adjoinder with senior surveys. Parol evidence was admissible to show where on the ground the line was actually made. Gill v. Peterson, Tex.Com. App., 126 Tex. 216, 86 S.W.2d 629; Blake v. Pure Oil Co., Tex.Com.App., 128 Tex. 536, 100 S.W.2d 1009. Since the evidence introduced in the trial court failed to establish as a matter of law the location on the ground of the west line of the Barker Survey, the location became an issue for the jury. Appellants' contention as to the proper location of the west line of the Barker Survey was presented to the jury and appellants failed to secure a favorable finding.

■ The evidence reflects that no corner of the Gardiner Survey can be established on the ground without dispute, however the jury found, in answer to a proper

issue submitted to them, the location of the west line of the Gardiner Survey in accordance with the contentions of appellees. There was sufficient evidence to support this finding.

It is not questioned that the judgment of the trial court properly disposed of the land in controversy, if it is located on the ground in accordance with the verdict of the jury. The appellants' Points One through Ten present no error.

■ Appellants' Points Eleven, Twelve and Thirteen complain that the court erred in submitting to the jury Special Issue No. Six relating to an alleged parol boundary agreement. Since we have determined that the judgment of the trial court is fully supported by the answers of the jury to Special Issues One and Five, the answer made to Special Issue No. Six is immaterial and the error, if any, of the trial court in submitting it could not have affected the judgment entered. ·

■ By Points of Error Fourteen through Seventeen, appellants contend that the trial court erred in refusing to admit into evidence testimony of E. H. Timmerman that his mother and two of his brothers pointed out to him the dividing line between the Gardiner and the Barker Surveys, and a line which they said was a line dividing the Gardiner Survey in half. He testified that he heard a discussion of these matters between his mother, his older brothers and A. E. Connable, during negotiations for the purchase of land from Connable. E. H. Timmerman is an interested party. His testimony, properly preserved by bill of exceptions, negatives any contention that the statements made reflected a general reputation of the community. The statement that certain lines were pointed out to him by his mother and by Mr. Connable would properly be regarded as statements made by owners in possession at a time prior to this controversy. Both of these parties are deceased. Evidence of this nature has been held admis-

sible. Stroud v. Springfield, 28 Tex. 649; Evans v. Hurt, 34 Tex. 111; Russell v. Hunnicutt, 70 Tex. 657, 8 S.W. 500; Cockrell v. Work, Tex.Civ.App., 94 S.W.2d 784, writ dism.

While being examined with reference to defendant's exhibit 83, a deed from A. E. Connable to Mrs. C. L. Timmerman, Mr. Timmerman clearly testified that the west line of the 17 acre tract described therein ran along the east line of Campbell Road, and that the entire tract was located east of Campbell Road. The deed located the N. W. Corner of this tract at the N. W. Corner of the E. Barker Survey and the N. E. Corner of the J. B. Gardiner Survey, and described that point as being 1319 feet (475 varas) west of the South East Corner of the Alexander Area Survey. By the same deed another tract of land containing 23 acres described as being a part of the Gardiner Survey and west of and adjacent to the 17 acre tract was conveyed to Mrs. Timmerman. Mr. Timmerman testified that the Campbell Road ran between the two tracts and that he lived in a house on one side of Campbell Road and his mother lived on the other side of the road for many years. There was other testimony locating the Timmerman land with reference to Campbell Road, and there is no substantial dispute with reference to these matters.

While there was no dispute as to the location of the Timmerman land with respect to Campbell Road, there was dispute as to the location of Campbell Road with respect to the Gardiner east line and the Barker west line. The testimony excluded was to the effect that Mr. Timmerman heard a discussion between his mother, his two brothers and Mr. Connable, the purport of which was that a survey had been made which reflected that the property they purchased was on the dividing line between the two surveys and extended west to the mid-line of the Gardiner Survey. This conversation took place more than forty years previously when the witness was about nine years of age. It is largely cumulative and, being hearsay, would be ad-

missible only by reason of the fact that it is the best available evidence. Since the location of the Timmerman land is not in issue, the location of their lines is not relevant by reason of the fact that the description in their deeds refers to the Survey corners. Since the same deed locates the corners with reference to a known corner of the Alexander Area Survey, their testimony would not constitute the best available evidence of the location of the Survey corners. The extent of their claim as owners would not seem to be relevant to the issue of the location of the Survey corners unless based on the description contained in their deeds. Since it appears from the bill of exceptions that the opinions as to the location of the Survey lines were based on a survey made either by Mr. Connable or the Timmerman brothers, neither of whom is shown to be a surveyor, in 1916, and were not shown to be based on general reputation in the community, the testimony would have no probative value as to the original location of the Survey lines. State v. Dayton Lumber Co., Tex.Civ.App., 159 S.W. 391; Dunn v. Land, Tex.Civ.App., 193 S.W. 698.

In any event, we do not think it probable that the exclusion of this testimony probably resulted in the rendition of an improper judgment. If error was committed, it was not such as to require a reversal of the judgment rendered.

By their Eighteenth and Nineteenth Points appellants complain of the court's refusal to define the term "artificial object" as used by the court in this portion of his charge:

> "You are instructed that you are to undertake to locate such boundaries as you are called on to locate in answering the special issues herein as they were located by the surveyor who made the original survey on the ground and in so doing you should give priority to natural objects, artificial objects, courses, distances and quantity, in the order herein stated."

■ Appellants objected that the court failed to instruct the jury that a line of a located survey is an artificial object and controls a call for distance. Since the court gave an instruction on priority of calls, the requested instruction was improper in that it would have unduly emphasized the matter of priority of calls for artificial objects over calls for distance. Swearingen v. Brown, Tex.Civ.App., 195 S.W.2d 724; Sanders v. Worthington, Tex. Civ.App., 349 S.W.2d 115.

■ There was no error in refusing the requested explanatory instruction since the substance of the matter contained therein was included in the court's charge. Funderburk v. Dofflemeyer, Tex.Civ.App., 234 S.W.2d 889, error ref. The objection to the failure of the court to define the term "artificial object" does not present error since appellants did not submit to the court a definition which was substantially correct. Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312, Texas Employers Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000.

■ Appellants complain of the refusal of the trial court to grant a new trial based upon newly discovered evidence. It is our view that the evidence, on which the motion for new trial was based, was admissible only to impeach certain of appellees' witnesses on the collateral issue of the location on the ground of the Gottlieb Wolff Survey made by Bringhurst. While the field notes state that the Wolff Survey is bounded on the south and west by the Barker Survey, the field notes do not call for any line or corner of the Barker. It is of doubtful value in attempting to locate the footsteps of the surveyor of the Barker Survey which calls for the lines of the original Gottlieb Wolff Survey. This survey may be platted on the ground from an established corner called for in its own field notes, which are not ambiguous. As a matter of law the survey would have to be so constructed on the ground. Thomson v.

Langdon, 87 Tex. 254, 28 S.W. 931; Wood v. Stone, Tex.Civ.App., 359 S.W.2d 68.

It is our opinion that appellants failed to show diligence in discovering the evidence relied on; that the testimony was both cumulative and impeaching; and that it was not of such materiality that, if believed, it would probably result in a different verdict upon another trial. The trial court did not err in refusing the motion for new trial. McDonald, Texas Civil Practice, Vol. 4, Sec. 18.16; Redden v. Pure Oil Co., Tex. Civ.App., 86 S.W.2d 874; Peterson v. Clay, Tex.Civ.App., 225 S.W. 1112.

■ Appellants' requested special instruction No. 2 was properly refused by the trial court. The court was requested to submit to the jury the following instruction:

"You are instructed that in locating the lines of a survey that there can be no possible overlapping surveys where a junior survey expressly calls to begin at a senior line or corner, and that where the line or corner of the senior survey is established the junior begins, and the calls for distance of the junior must yield accordingly."

As applied to the facts of this case, the instruction on priority of calls given by the trial court was a more appropriate guide for the jury in following the footsteps of the surveyor. In Blake v. Pure Oil Co., Tex. Com.App., 128 Tex. 536, 100 S.W.2d 1009, the court stated:

"But as to the location of a survey on the ground the inquiry is where the surveyor actually placed it, not where he originally intended to place it or where he should have placed it."

■ Appellants contend that the trial court erred in overruling their motion for instructed verdict on appellees' cross-action because appellees showed no title to the land sued for except through a deed from Bessie Margaret Higgins Henry to the Veterans Land Board to which was attached a copy

of the Roy Pitner map, which reflects that the west line of the J. B. Gardiner Survey is 544.85 feet east of its true boundary line as determined by corners and measurements reflected on the map. The deed describes the land with reference to the map, but also describes it with reference to certain recorded deeds in the chain of title, which do not refer to the Pitner map, and which contain a metes and bounds description. The Pitner map reflects that the west line of the Gardiner Survey is located at the place fixed by the jury in this case. Since that line is fixed on the map with reference to the Wilkins fence, the fact that it also fixes the west line of the Barker Survey by course and distance from its south east corner shows on its face that the map is ambiguous and self-contradictory. The trial court was not required, as a matter of law, to find that appellees were estopped to deny the truth of the notations found on the map.

Appellants contend that as a matter of law the S. W. Corner of the Barker Survey, also the beginning corner of the Gardiner Survey, must be located by metes and bounds from its S. E. Corner as the nearest established corner with which the Gardiner Survey is connected by its field notes. None of the corner markers placed by the original surveyor can be located today. No natural objects were called for by the field notes of the Gardiner Survey. The point of beginning was the South West Corner of the E. Barker Survey. This corner can be located on the ground by course and distance from the South East Corner of the Survey. This South East Corner can be located on the ground from the N. W. Corner of the senior William C. Wallace Survey, and there is no substantial dispute as to its actual location on the ground.

By reversing the calls, the N. W. Corner of the Barker Survey can be located from its most northerly N. E. Corner, which is located by the field notes at the S. E. Corner of the Alexander Area Survey. The location on the ground of this S. E.

Corner of the Alexander Area Survey is stipulated.

The west line of the Barker Survey located from the S. E. Corner of the Alexander Area Survey is 183.01 varas east of the place it would be located by measuring the call for distance from its S. W. Corner.

 It is well established that in locating lines of a survey, one corner is entitled to no more weight than any other established corner. A survey constructed from a recognized beginning corner is entitled to no more weight than one constructed from another established corner. Davidson v. Killen, 68 Tex. 406, 4 S.W. 561; Kirby Lumber Co. v. Gibbs Bros. & Co., Tex.Com.App., 14 S.W.2d 1013; Humble Oil & Refining Co. v. Ellison, Tex. Com.App., 134 Tex. 140, 132 S.W.2d 395.

In Kirby Lumber Co. et al. v. Adams, 127 Tex. 376, 93 S.W.2d 382, the court said:

"* * * where the natural and artificial objects of the grant cannot be identified upon the ground, the proper method of locating the lines and corners will be by course and distance from from the nearest recognized and established corner or artificial object with which the field-notes are connected. Petty v. Paggi Bros. Oil Co. (Tex.Com.App.) 254 S.W. 565."

If this rule of construction be held applicable in this case, as a matter of law, the east line of the Gardiner Survey must be established by course and distance from the south east corner of the Alexander Area Survey since that is the nearest recognized and established corner with which the field notes of the Gardiner Survey connect.

 Appellees' motion to dismiss the appeal of appellants Schoeneweiss is granted. Since those parties prevailed in the trial court on all material points placed in issue by their pleadings, the judgment of the trial court was not adverse to their interests. "The right of review on appeal is limited to errors which are prejudicial, and

the burden, at least prima facie, of showing prejudice, is on appellant." Douglas Oil Co. v. State, Tex.Civ.App., 70 S.W.2d 452. See also Royal Neighbors of America v. Fletcher, Tex.Civ.App., 230 S.W. 476; Hunt v. Burrage, Tex.Civ.App., 84 S.W.2d 1098; Barnsdall Oil Co. v. Hubbard, 130 Tex. 476, 109 S.W.2d 960.

The judgment of the trial court is affirmed.

### On Motions for Rehearing

 In their motion for rehearing appellants have pointed out that we stated in our opinion that the Southwest corner of the Barker Survey could be located on the ground from the metes and bounds description found in the Barker field notes. We were careful to point out that the corner markers, if any, placed by the original surveyor cannot be located today. A question of fact was raised by the evidence as to the location of this corner, as well as of other corners, of the Barker Survey as marked by the original surveyor because conflicts arise between course and distance and artificial monuments called for in the field notes when the description contained in the Barker field notes is run out on the ground. Gill v. Peterson, Tex.Com.App., 126 Tex. 216, 86 S.W.2d 629, opinion adopted.

 In that case the Commission of Appeals quoted with approval from State v. Post, Tex.Civ.App., 169 S.W. 401, as follows:

"In the absence of natural or artificial marks called for in the field notes showing error in course or distance, and in the absence of proof as to how surveys were actually made, they must be run out course and distance from known corners with which they connect by their callings."

In the case of the Barker Survey there are artificial marks called for in the field notes showing error in distance, and in both course and distance if the Northeast

re-entrant corner is used as a place of beginning with the calls reversed.

However, we are attempting to locate land in the Gardiner Survey. The rule of State v. Post, supra, is applicable. It is appellants' contention that the Gardiner Survey must be constructed from the Southwest corner of the Barker Survey called for in the Gardiner field notes as the beginning corner. The Northwest corner of the Barker Survey·is also called for in the field notes of the Gardiner Survey. We have held that the proper location on the ground of the west line of the Barker Survey was not established by the evidence as a matter of law. If, therefore, we attempt to fix the location on the ground of the Gardiner Survey, as a matter of law, we must locate either the Northwest or the Southwest corner of the Barker Survey. In attempting to do so the evidence demonstrates that the Southeast corner of the Alexander Area Survey is located at a stipulated place on the ground. The Northwest corner of the Barker Survey can be constructed course and distance from this corner. The evidence discloses that the location on the ground of the most southerly Northeast corner of the Barker Survey is undisputed. By running course and distance the Southeast corner can be constructed, and, from that point by course and distance, the Southwest corner. Ordinarily, under such circumstances, we would be required to give preference to the nearest established corner with which the field·notes connect. Clarke v. Klein, Tex.Civ.App., 166 S.W. 1179; Standefer v. Vaughan, Tex.Civ.App., 219 S.W. 484; Matador, etc. v. Cassidy, Tex.Civ.App., 207 S.W. 430; Jones v. Burgett & Hickock, 46 Tex. 284; Randall v. Gill, 77 Tex. 351, 14 S.W. 134. To do so in this case would support the judgment of the trial court based on findings of fact made by the jury. We have not been content to rest our decision on this basis alone because the evidence casts doubt on the accuracy of the distance calls in the Barker Survey field notes. See Johnson v.

Archibald, 78 Tex. 96, 14 S.W. 266; Jones v. Burgett, supra.

In Standefer v. Vaughan, supra, the court said:

"While general rules of surveying have been formulated and to some calls greater dignity is given than to others, yet the lowest may be resorted to and adopted to arrive at the·intention of the locator, and to establish the real location·of the land. It is only at last a question of fact or evidence in boundary suits."

We do not consider it essential to attempt to find the true location on the ground of the Barker Survey when the jury on proper evidence has located the west line of the Gardiner Survey from which the true location of the property in dispute was established.

The motions for rehearing are overruled.